1 | JEFFREY V. DUNN, Bar No. 131926
LEE ANN MEYER, Bar No. 108472

2 | Best Best & Krieger LLP
18101 Von Karman Avenue, Suite 1000

3 | Irvine, California 92612
Telephone: (949) 263-2600

4 | Facsimile: (949) 260-0972

**EXEMPT FROM FILING FEES
PURSUANT TO GOVERNMENT CODE
SECTION 6103**

5 | Attorneys for Defendants

6 | County of Shasta, David A. Kehoe, Leonard Moty,
Glenn Hawes, Linda Hartman, Les Baugh, Tom

7 | Bosenko, Deputy Timothy Estes, Detective John
Meeker, and Deputy Jesse Gunsauls

8 | UNITED STATES DISTRICT COURT

9 |

10 | EASTERN DISTRICT OF CALIFORNIA - SACRAMENTO

11 |

12 | CHRISTOPHER DALE STAFFIN, an individual, MEDICINE MAN COLLECTIVE, SPIRITUAL CENTER CORPORATION, a Non profit corporation,

Case No.
Judge:

**NOTICE OF REMOVAL OF ACTION**

13 |

14 | Plaintiffs,

**[28 U.S.C. § 1441(a) – FEDERAL QUESTION]**

15 | v.

16 |

17 | COUNTY OF SHASTA; DAVID A. KEHOE, individually and as a Supervisor of the County of Shasta; LEONARD MOTY, individually and as a Supervisor of the County of Shasta; GLENN HAWES, individually and as a Supervisor of the County of Shasta; LINDA HARTMAN, individually and as a Supervisor of the County of Shasta; LES BAUGH, individually and as a Supervisor of the County of Shasta; TOM BOSENKO, individually and as the Sheriff of the County of Shasta; DEPUTY TIMOTHY ESTES and DETECTIVE JOHN MEEKER, DEPUTY JESSE GUNSAULS, individually and as deputies of the Shasta County Sheriff's Department; DOES 1-50,

*[Filed concurrently with Certification of Interested Parties]*

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 | Defendants.

26 |

27 |

28 |

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

1   TO THE CLERK OF THE ABOVE-CAPTIONED COURT:

2   PLEASE TAKE NOTICE that Defendant David Kehoe hereby removes to this Honorable

3   Court the state court action described below.

4   1.   On January 7, 2013, this action was commenced in the Superior Court of the State

5   of California in and for the County of Shasta entitled *Christopher Dale Staffin, et al. v. County of*

6   *Shasta, et al.* The suit was assigned case number 176436 by the Shasta County Superior Court. A

7   true and correct copy of the Complaint is attached hereto as Exhibit "A."

8   2.   The first date upon which Defendants David Kehoe and Les Baugh received a

9   copy of said Complaint was on January 15, 2013, when a copy of the Complaint was served on

10   them along with a Summons from the state court. A true and correct copy of the state court

11   Summons is attached hereto as Exhibit "B."

12   3.   The Summons and Complaint are the only papers that have been served on the

13   removing Defendants in the state court action.

14   4.   All Defendants have been served with the Summons and Complaint. All

15   Defendants join in the Notice Of Removal. See Exhibit "C," the Joinder in Notice of Removal Of

16   Action.

17   5.   This Court has original jurisdiction under 28 U.S.C. section 1331 and removal

18   jurisdiction under 28 U.S.C. section 1441(b), in that Plaintiffs allege a claim that arises under 42

19   U.S.C. section 1983, the Commerce Clause of the United States Constitution, and the Fourteenth

20   Amendment to the United States Constitution.

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6.      Concurrent with the filing of this Notice of Removal, a Notice to State Court and Adverse Parties of Removal to Federal Court is being filed with the state court and served on Plaintiffs' counsel.  A true and correct copy of that Notice with proof of service thereof is attached hereto as Exhibit "D."

Respectfully submitted,

Dated:  February 14, 2013

BEST BEST & KRIEGER LLP

By: _____
JEFFREY V. DUNN
LEE ANN MEYER
Attorneys for Defendants
County of Shasta, David A. Kehoe,
Leonard Moty, Glenn Hawes, Linda
Hartman, Les Baugh, Tom Bosenko,
Deputy Timothy Estes, Detective John
Meeker, and Deputy Jesse Gunsauls

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

55398.00002\7796923.1

- 2 -

# EXHIBIT "A"

1  Michael A. Scheibli (S.B. No. 196748)
   Attorney at Law
2  1416 West Street
   Redding, CA 96001
3  Telephone: (530) 243-0317
   Facsimile: (530) 243-2003
4
   Attorneys for Plaintiff
5

6

**FILED**

JAN 07 2013

CLERK OF THE SUPERIOR COURT
BY: H. FARINSKY, DEPUTY CLERK

7           SUPERIOR COURT OF CALIFORNIA

8               COUNTY OF SHASTA

9

10  CHRISTOPHER DALE STAFFIN, an          )   No.        **176436**
    individual,                           )
11  MEDICINE MAN COLLECTIVE,              )
    SPIRITUAL CENTER CORPORATION, a       )
12  Non profit corporation,               )   **COMPLAINT FOR DAMAGES AND
                                          )   TO ENJOIN   PROSPECTIVE ACTS
13       Plaintiffs,                      )   OF   INDIVIDUALS IN THEIR
                                          )   OFFICIAL   AND UNOFFICIAL
14  v.                                    )   CAPACITIES  AND JURY TRIAL
                                          )   DEMAND**
15  COUNTY OF SHASTA,                     )
    DAVID A. KEHOE, individually and as a )
16  Supervisor of the County of Shasta,   )
    LEONARD MOTY, individually, and as a  )
17  Supervisor of the County of Shasta,   )
    GLENN HAWES, individually and as a    )
18  Supervisor of the County of Shasta,   )
    LINDA HARTMAN, individually and as a  )
19  Supervisor of the County of Shasta,   )
    LES BAUGH individually and as a       )
20  Supervisor of the County of Shasta,   )
    TOM BOSENKO, Individually and as the  )
21  Sheriff of the County of Shasta,      )
    DEPUTY TIMOTHY ESTES and              )
22  DETECTIVE JOHN MEEKER,                )
    DEPUTY JESSE GUNSAULS,                )
23  individually and as deputies of the Shasta )
    County Sheriff's Department,          )
24                                        )
    DOES 1-50.                            )
25                                        )
         Defendants.                      )
26                                        )

                            1

Plaintiffs, CHRISTOPHER DALE STAFFIN, an individual and   MEDICINE MAN COLLECTIVE SPIRITUAL CENTER CORPORATION, a NON PROFIT CORPORATION, alleges as follows:

This is a civil action seeking damages against defendants for the commission of acts, under color of state law, that deprived Plaintiffs of rights secured to them by the Constitution and laws of the United States and of the Constitution and Laws of the State of California and to seek an injunction against Defendants from violating the supremacy clause of the State of California. Plaintiffs further claim that Defendants and each of them intentionally interfered with and/or attmpted to interfere with the civil rights by threatening and/or committing violent acts.

THE PARTIES

1.    Plaintiff, CHRISTOPHER DALE STAFFIN, is an individual and a resident of Shasta County California at all relevant times herein.

2.    Plaintiff, MEDICINE MAN COLLECTIVE SPIRITUAL CENTER CORPORATION, a NON PROFIT CORPORATION, organized under the Laws of the State of California  is a resident of Shasta County, California at all relevant times herein.

3.    Defendant COUNTY OF SHASTA, is a County organized and existing under the laws of the State of California.  The Sheriff's Department is a department of the County of Shasta.

4.    Defendant DAVID A. KEHOE, was at all relevant times, and is an elected Supervisor of Defendant COS.  As an elected Supervisor of Defendant COS, Defendant DK, during relevant times herein, had the duty and possessed the authority to enact statutes, administer and regulate the affairs of the Defendant COS, supervise Department heads including the Sheriff of the Defendant COS, set, implement, administer and regulate the policies, customs and practices of various Departments of the County of Shasta and its supervisory personnel,  and as such was a final decision maker in selecting and  implementing the policies, customs and practices of the

2

1   various departments of the Defendant COS.  He is sued by plaintiffs in both his individual and

2   official capacities.

3   5.        Defendant LEONARD MOTY, was at all relevant times, and is an elected Supervisor of

4   Defendant COS.  As an elected Supervisor of Defendant COS, Defendant LM, during relevant

5   times herein, had the duty and possessed the authority to enact statutes, administer and regulate

6   the affairs of the Defendant COS, supervise department heads including the Sheriff of the

7   Defendant COS, set, implement, and administer and regulate the policies, customs and practices

8   of various Departments of the County of Shasta and its supervisory personnel,  and as such was a

9   final decision maker in selecting and  implementing the policies, customs and practices of the

10  various departments of the Defendant COS.  He is sued by plaintiffs in both his individual and

11  official capacities.

12  6.        Defendant GLENN HAWES, was at all relevant times, and is an elected Supervisor of

13  Defendant COS.  As an elected Supervisor of Defendant COS, Defendant GL, during relevant

14  times herein, had the duty and possessed the authority to enact statutes, administer and regulate

15  the affairs of the Defendant COS, supervise department heads including the Sheriff of the

16  defendant COS, set, implement, and administer and regulate the policies, customs and practices

17  of various Departments of the County of Shasta and its supervisory personnel,  and as such was a

18  final decision maker in selecting and  implementing the policies, customs and practices of the

19  various departments of the Defendant COS.  He is sued by plaintiffs in both his individual and

20  official capacities.

21  7.        Defendant LINDA HARTMAN, was at all relevant times, and is an elected Supervisor

22  of Defendant COS.  As an elected Supervisor of Defendant COS, Defendant LH, during relevant

23  times herein, had the duty and possessed the authority to enact statutes, administer and regulate

24  the affairs of the Defendant COS, supervise department heads including the Sheriff of the

25  defendant COS, set, implement, and administer and regulate the policies, customs and practices

26  of various Departments of the County of Shasta and its supervisory personnel,  and as such was a

1 | final decision maker in selecting and implementing the policies, customs and practices of the

2 | various departments of the Defendant COS. She is sued by plaintiffs in both her individual and

3 | official capacities.

4 | 8.      Defendant LES BAUGH, was at all relevant times, and is an elected Supervisor of

5 | Defendant COS. As an elected Supervisor of Defendant COS, Defendant LB, during relevant

6 | times herein, had the duty and possessed the authority to enact statutes, administer and regulate

7 | the affairs of the Defendant COS, supervise department heads including the Sheriff of the

8 | defendant COS, set, implement, and administer and regulate the policies, customs and practices

9 | of various Departments of the County of Shasta and its supervisory personnel, and as such was a

10 | final decision maker in selecting and implementing the policies, customs and practices of the

11 | various departments of the Defendant COS. He is sued by plaintiff in both his individual and

12 | official capacities.

13 | 9.      Defendant TOM BOSENKO was at all relevant times, is the Sheriff of Defendant COS.

14 | Defendant TB is sued by Plaintiffs in both his individual and official capacities.

15 | 10.      Defendant TIMOTHY ESTES was at all relevant times, a sworn law enforcement officer

16 | with Shasta Count Sheriff's Department. Defendant TE is sued by Plaintiffs in both his

17 | individual and official capacities.

18 | 11.      Defendant JOHN MEEKER was at all relevant times, a sworn law enforcement officer

19 | with Shasta Count Sheriff's Department. Defendant JM is sued by Plaintiffs in both his

20 | individual and official capacities.

21 | 12.      Defendant JESSE GUNSAULS was at all relevant times, a sworn law enforcement

22 | officer with Shasta Count Sheriff's Department. Defendant JM is sued by Plaintiffs in both his

23 | individual and official capacities.

24 | 13.      Plaintiff does not know the true names and capacities, whether individual, corporate,

25 | associate, or otherwise, of defendants sued as Does 1 through 50, inclusive, and therefore sues

26 | these defendants by such fictitious names pursuant to Code of Civil Procedure section 474.

1    Plaintiff will seek leave to amend this complaint to allege the true names and capacities of these

2    defendants when ascertained, together with additional charging allegations as necessary.  Plaintiff

3    is informed and believes that each of the fictitiously named defendants is legally responsible in

4    some manner for the occurrences alleged and for plaintiff's resulting damages.

5    14.     At all times material to this complaint, the defendants, and each of them, were engaged in

6    an employer-employee, master-servant and/or principal-agent relationship with one another, and

7    each was acting within the course and scope of each such relationship.

8    15.     At all times material to this complaint, defendants and each of them acted or purported to

9    act under color of the law, customs, and usages of the State of California.

10

11                            **GENERAL ALLEGATIONS**

12   16.     On or about October 26, 2010,   Plaintiff MMCSC filed Articles of Incorporation with the

13   Secretary of State of the State of California as a mutual benefit corporation  and thereby became

14   a legal entity and a citizen of the United States of America and the State of California. *Citizens*

15   *United v. Federal Election Commission*, 558 U.S. 310 (2010).  Attached hereto as Exhibit A and

16   incorporated herein by reference is a true and correct copy of the filed Articles of Incorporation.

17   17.     On or about October 26, 2010, Plaintiff Christopher Staffin was named Chief Executive

18   Officer and First Officer of Plaintiff MMCSC.  As CEO of Plaintiff MMCSC, Staffin entered

19   into an oral  Contract to receive a compensation for actual expenses, including a reasonable

20   compensation incurred for services provided to the qualified members and patients of Plaintiff

21   MMCSC.  Evidence of the right to pay and the oral contract hereinabove is contained in the

22   Bylaws the Plaintiff MMCSC attached hereto as Exhibit B and incorporated herein by reference.

23   18.     On or about April 1, 2010, Plaintiff MMCSC entered into a lease agreement for a

24   commercial property located at 37016 Main Street Burney, CA.  This a storefront operation was

25   opened as collective as that term is utilized under the Medical Marijuana Program Act, Health

26   and Safety Code §11362.7 et. Seq.  The purpose of the collective was to produce, secure,

1  dispense, cultivate, and distribute medical grade marijuana for the consumption of patients

2  registered as members of the Plaintiff MMCSC. A true and correct copy of the lease is attached

3  hereto as Exhibit C and incorporated herein by reference.

4  19.    On or about November 1, 2010 Plaintiff MMCSC obtained a seller's permit from the

5  California State Board of Equalization. At all relevant times herein MMCSC maintainted its

6  Sellers permit. A true and correct copy of the permit is attached hereto as Exhibit D and

7  incorporated herein by reference.

8  20.    Plaintiffs maintained a patient registration and in all manner followed the precepts of

9  California law as it related to the operation of collectives, dispensaries and/or cooperatives to

10  produce, cultivate, transport, possess, sell and dispense medical grade marijuana to the members

11  of Plaintiff MMCSC. Membership to the collective was maintained under strict adherence to

12  California State law. A true and correct copy of the Membership Standards is attached hereto as

13  Exhibit E and incorporated herein by reference. All members and/or patients were required to

14  sign a Patient Registration which provided their name, address, CDL number and the date of their

15  physician's prescription and/or recommendation. A true and correct copy of a redacted Patient

16  Registration is attached hereto as Exhibit F and incorporated herein by reference.

17  21.    On or about June 4, 2011 Plaintiff MMCSC by and through its CEO Plaintiff STAFFIN

18  entered into a contract to lease land at 29373 Day Road, McArther, CA 95056 for the purpose of

19  cultivating and producing medical grade marijuana solely for the purpose of dispensing medical

20  grade marijuana to the members of Plaintiff MMCSC at cost to plaintiff after taking into

21  consideration for  compensation for actual expenses, including a reasonable compensation

22  incurred for services provided to the qualified members and patients of Plaintiff MMCSC in

23  cultivating, producing, and dispensing the medical grade marijuana including a reasonable salary

24  and/or wages to the employees and management of the Plaintiff MMCSC including Plaintiff

25  Staffin. A true and correct redacted copy of the land lease is attached hereto as Exhibit G and

26  incorporated herein by reference.

6

22.     Plaintiff MMCSC did cultivate medical Grade marijuana at the Day Road location, at all times relevant herein after the contract Exhibit G, was entered into until the acts of the Defendants hereinafter made such cultivation impossible as set forth hereinafter.

23.     The Defendants and each of them entered into a conspiracy to prevent the Plaintiffs from legally and peaceably cooperatively and collectively cultivating, dispensing, possessing, transporting, and distributing medical grade marijuana and operating a collective and/or dispensary for the purpose of peaceably cooperatively and collectively cultivating, dispensing, possessing, transporting, and distributing medical grade marijuana by the acts herein after stated.

24.     On or about December 31, 2011 Defendants DK, LM, GH, LH, and LB did cause to be enacted Shasta County ordinance SCC 2011-05, which purpose was to prevent any and all collective cultivation of medical marijuana on parcels of land with less than 20 acres and only allowed cultivation at personal residences.  The ordinance allows the cultivation of marijuana on 1 acre or less limited to 60 square feet up to 360 square feet of cultivation for parcels greater than 20 acres.  Plaintiffs are informed and believe that one fully mature medical grade marijuana plant grown outdoors far exceeds 60 square feet.  The ordinances practical effect is to supplant California law by preventing Plaintiffs from legally and peaceably cooperatively and collectively cultivating medical marijuana in Shasta County.  Plaintiffs are informed and believe that this was the intent of Defendants DK, LM, GH, LH, and LB. The statute is a de facto ban rather than a regulation of all medical marijuana cooperatives, collectives, dispensaries, operators, establishments or providers.

25.     The Defendant COS began a harassment program in November 2009, in furtherance of a de facto policy to ban all medical marijuana cooperatives, collectives, dispensaries, operators, establishments or providers not to legitimately regulate said medical marijuana cooperatives, collectives, dispensaries, operators, establishments or providers.  Brett Hail, a code enforcement officer with Defendant COS, issued a cease and desist order and demanded entrance to the Plaintiff, MMCSC business at 37016 Main Street Burney, CA.  During a verbal confrontation

1   with Plaintiff Chris Staffin, with Martin Clark, a Shasta County resident present, Brett Hail

2   acknowledged that the purpose of his visit was to use "red tape" to run the Plaintiff MMCSC out

3   of business.  Hail stated "... we've been successful running out motorcycle gangs in this county

4   with red tape tactics ..."

5   26.     On or about February 23, 2010 Defendants DK, LM, GH, LH, and LB did cause to be

6   enacted an emergency Shasta County ordinance which created a moratorium on medical

7   marijuana dispensaries for 45 days, a complete ban.  The minutes of the Board of Supervisors of

8   Defendant County of Shasta, which included Defendants DK, LM, GH, LH, and LB

9   acknowledge that the moratorium would only be effective for dispensaries created during the 45

10  day period.

11  27.     On or about April 6, 2010 Defendant COS through its Board of Supervisors including

12  Defendants DK, LM, GH, LH, and LB did cause to be enacted an emergency Shasta County

13  ordinance which created extended the moratorium enacted February 23, 2010, on the medical

14  marijuana dispensaries.  No comment in the minutes of the Defendant COS Board of Supervisors

15  meeting discussed the issue of existing dispensaries.

16  28      On or about April 20, 2010,  another code enforcement officer with Defendant COS, Jerry

17  Bellinger arrived at the Plaintiff MMCSC's Main Street location and cited Plaintiffs for no

18  special use permit and being a public nuisance based on the ordinance passed on April 6, 2010

19  despite the fact that the Plaintiff MMCSC had already been operating the dispensary prior to the

20  enactment of the ordinances.  Bellinger  acknowledged that a conspiracy existed to use red tape

21  to run Defendant out of business.  Bellinger stated that " ... the boys upstairs sent him and you

22  will now have to have a special use permit.", based on the ordinances passed after Plaintiff

23  MMCSC had begun operations and after Plaintiff MMCSC had entered into a valid lease and an

24  oral contract with Plaintiff Christopher Staffin. Such conduct by Bellinger was construed by the

25  plaintiffs as intimidating and further as a threat and coercion that the action would continue until

26  the Plaintiff ceased operating their business. Two armed deputy sheriff's with Defendant COS's

1    Sheriff's Department were present to intimidate, coerce and threaten the Plaintiff's. No crimes

2    were alleged and no criminal investigation was suggested, the sole purpose of the uniformed

3    officers was to interfere with the Plaintiffs' business by intimidating and coercing the Plaintiffs

4    to cease conducting business and the vested contractual rights secured by the United States

5    Constitution and the Constitution of the State of California.

6    29.    Plaintiffs are informed and believe that the landlord of Plaintiffs, Jeffrey Phinney was

7    also cited on April 20, 2010.

8    30.    On or about November 3, 2010, code enforcement officer Jerry Bellinger of Defendant

9    COS arrived at the Plaintiff MMCSC's Main Street location and cited Plaintiffs for no special

10   use permit and being a public nuisance again based on ordinances passed after Plaintiff MMCSC

11   had begun operations and entered into a valid lease with Jeffrey Phinney and an oral contract

12   with Plaintiff Christopher Staffin. Bellinger again acknowledged that a conspiracy existed to use

13   red tape to run Defendant out of business. Bellinger stated that " ... the boys upstairs are not

14   going to change their tune ...".

15   31.    On or about November 3, 2010 when Code enforcement officer Bellinger arrived he

16   brought with him four Shasta County deputies and a Detective with the Shasta County Sheriff's

17   Department. The Detective harassed, harangued and unreasonably questioned Plaintiff Staffin

18   for over 45 minutes and with the assistance of the four unknown uniformed deputies which

19   conduct intimidated, coerced and threatened the Plaintiff's in an attempt to interfere with the

20   vested contractual rights of the Plaintiffs and intimidate the Plaintiffs into closing their business.

21   Again no criminal conduct had occurred nor did the Detective or the uniformed deputies discuss

22   any possible criminal conduct, the only purpose of the armed uniformed deputies and armed

23   detective was to intimidate, threaten and coerce the Plaintiffs.

24   32.    On or about November 8, 2010, Plaintiff Staffin informed Jeffrey Phinney the Plaintiffs

25   were again was cited for operating an illegal operation.

26   ///

33.     During the first 6 months of 2010, Defendant COS through its Sheriff's Department, further intimidated, coerced and threatened Plaintiffs and Plaintiff's MMCSC's legitimate patients by parking marked SUV patrol vehicles sometimes 2 and 3 deep across the street, down the street, on the bridge across from the Plaintiff MMCSC's Main Street location and openly observing the customers on a weekly basis.  When Plaintiff Staffin would attempt to photograph the Deputies, the vehicles would disperse.

34.     The Plaintiff's were successful in having the citation number 1  for lack of a use permit and a public nuisance dismissed, and on citation number 2 the public nuisance was dismissed, however, a pro tem judge from Sonoma County found the Plaintiffs guilty of operating without a special use permit.

35.     On or about November 4, 2010, one day after Proposition 19, a statewide referendum to legalize marijuana for recreational purposes was defeated, Plaintiffs were cited for a third time for public nuisance and operating without a special use permit.

36.     The requirement of a special use permit was simply a ruse in furtherance of the Defendants conspiracy to interfere Plaintiffs legitimate business operation.  Plaintiffs attempted to apply for a special use permit, but were told by Assistant Director of the Planning Division, Rick Simon, that " ... there has never been a special use permit applied for in the County of Shasta ..." effectively acknowledging that the whole special use permit argument was simply a ruse to ban all businesses including medical marijuana cooperatives, dispensaries, operators and establishments that the Defendants and each of them personally believe to be morally reprehensible and does not live up to the Defendants personal moral standards.

37.     In December 2010 as a direct result of the citations issued to Jeffrey Phinney, the landlord of Plaintiff MMCSC, and the citations issues to the Defendants, Jeffrey Phinney refused any further rent from Plaintiffs.  Plaintiff is informed and believes and thereon alleges that the conduct of Phinney was on the direct advice of Defendant COS employees.

///

38.     On or about December 10, 2010 a warrant was issued for 37014 Main Street Burney, CA to enter the premises to determine if an "illegal nursery" was being operated. The Warrant was subsequently served on Plaintiffs at 37016 Main Street, Burney, CA. When Plaintiff Christopher Staffin objected to the warrant and pointed out that the address of Plaintiff MMCSC was 37016 Main Street Burney, CA, Staffin was arrested and charged with Penal Code §148, obstructing a peace office in the performance of his duties.

39.     In April 2011 the Plaintiffs were served with an unlawful detainer as a direct and proximate result of the harassment from the Defendant COS on the Plaintiffs and the Plaintiffs' landlord Jeffrey Phinney. In May 2011 Plaintiffs were evicted from the premises at 37016 Main Street, Burney, CA.

40.     As a direct result of the unlawful detainer action Plaintiffs were forced to modify their business to a cultivation and delivery business of medical grade marijuana. The lease of the Day Road property herein above described, was then entered into to continue the operation of the business of Plaintiff.

41.     On or about October 17, 2011 Plaintiff Christopher Staffin was stopped at gun point by Defendants Gunsauls and Estes and thereafter arrested Plaintiff Staffin in a vehicle registered to Plaintiff MMCSC. Seized from the vehicle by the Defendants was 33 pounds of medical grade marijuana. The arresting deputies left evidence in the vehicle and refused to review evidence that would have shown that the medical grade marijuana seized was grown collectively on behalf of patients with valid prescriptions and/or recommendations from licensed physicians. There was no evidence to suggest that the medical grade marijuana was illegally obtained, possessed, or transported, nor that any of the recommendations and/or prescriptions were invalid. The Defendants Gunsauls and Estes made no attempt to investigate the validity of the recommendations and/or prescriptions of the patients on whose behalf the medical grade marijuana was produced. The Defendants, Gunsauls and Estes had no probable cause to believe that the medical grade marijuana was illegally cultivated, produced, or transported. The

11

1  Marijuana has never been returned and Plaintiffs are informed and believe that it is no longer

2  useful as medicine based on science and pharmaceutical.

3  42.    Plaintiff Christopher Staffin was charged with the felonies of possession for sale and

4  transportation of marijuana among other crimes alleged by Defendants and each of them.

5  43.    On or about December 14, 2011 a preliminary hearing was held whereby the Plaintiff

6  Christopher Staffin was bound over to be tried on the transportation and possession for sale

7  charges.  The marijuana has never been returned.  As a direct proximate result of the herein

8  above conduct of the Defendants and each of them Plaintiffs were forced to cease all operations

9  on or about December 31, 2012 with no product to dispense, their business lease destroyed and

10  all capital being utilized to fight the criminal claims of Defendant COS and the red tape

11  procedures instituted by Defendants and each of them.

12  44.    On or about June 12, 2012 the Plaintiffs served on the Defendant County of Shasta a

13  claim form delineating the offenses of the Defendants and the injury of the loss of the business

14  which injury was within the 6 month time limitation of the Tort Claims Act of the State of

15  California.  A true and correct copy of the Claim is attached hereto as Exhibit _____ and

16  incorporated herein by reference.  On or about July 5, 2012 Defendant COS denied the claim.

17  Attached hereto as Exhibit I and incorporated herein by reference is a true and correct copy of the

18  denial of claim. This action is timely filed within the 6 month period prescribed by Government

19  Code §945.6

20  **FIRST CAUSE OF ACTION**

21  **(Deprivation of Vested Contractual Rights California Constitution Article 1 §1)**

22  45.    Plaintiff re-alleges and incorporates by this reference each and every allegation of paragraphs

23  1 through 44  as if fully set forth herein.

24  46.    Defendants County of Shasta and DK, LM, GH, LH, and LB of them conspired to deprive

25  the Plaintiffs and each of them of vested contractual rights by enacting statutes or ordinances with

26

No. _____ - Complaint for Damages and Jury Trial Demand

1    the intent of shutting down the business of Plaintiff MMCSC which conduct did effectively shut

2    down the business of the Plaintiff MMCSC.

3    47.    The Plaintiff MMCSC had a valid lease with Jeffrey Phinney, which was interfered with by

4    the Defendants and each of them by citing Jeffrey Phinney for the lease of his land to the Plaintiff

5    MMCSC. Such conduct was a direct and proximate cause of Jeffrey Phinney refusing to accept the

6    rent of the Plaintiff MMCSC and thereafter evicting the Plaintiff from his legal lease of the land

7    located at 37016 Main Street Burney, CA.

8    48.    The conduct of the Defendants and each of them was a direct and proximate cause of the loss

9    of the Plaintiff's business on or about December 31, 2011.

10   49.    The Plaintiff Christopher Staffin, had a vested right in his oral contract to receive

11   compensation for reasonable expenses and wages incurred in the operation of Plaintiff MMCSC.

12   50.    As a direct and proximate cause of the Defendants and each of them, the closing of the

13   Plaintiff's business on December 31, 2011 caused Plaintiff Christopher Staffin's vested contractual

14   rights to be infringed upon and Plaintiff Christoper Staffin lost reasonable wages which were to be

15   paid from the proceeds of the business

16   51.    This conduct by defendants and each of them was a substantial factor in causing physical,

17   emotional and economic injuries to Plaintiff, in amounts to be proved at trial.

18

19                              **SECOND  CAUSE OF ACTION**

20         **(For Violation of Plaintiffs'   Federal Civil Rights Against All Defendants)**
                                   **(42 U.S.C. § 1983)**
21

22   52.    Plaintiff re-alleges and incorporates by this reference each and every allegation of paragraphs

23   1 through 51 as if fully set forth herein.

24   53.    The Plaintiff herein alleges that the conduct of the Defendant's and each of them was a

25   violation of the vested contractual rights of the Plaintiffs as stated herein above. The conduct of the

26

---

No. _____          Complaint for Damages and Jury Trial Demand

1   Defendants and each of them violated the commerce clause of the United States Constitution and

2   was a direct and proximate cause of damages the Plaintiff's suffered.

3   54.      In addition, and in doing the acts alleged, defendants and each of them and Does 1 through

4   10,  carried out, implemented and conformed to certain official or de facto policies, customs,

5   practices and/or directives which had been issued, approved or condoned by Defendant COS, DK,

6   LM, GH, LH, and LB and Sheriff Tom Bosenko .  These policies, customs, practices and/or

7   directives include, but are not limited to, the following:  (1) failing to provide by official written

8   policy or procedure a definite and meaningful standard for following provisions of the California

9   Government Code 3300.;  (2) Failing to adopt and implement supervisor  training programs which

10  provide adequate instruction on to sworn officers pursuant to California law.; (3) Enacting statutes

11  or ordinances which directly interfered with vested contractual rights valid under California law.;

12  (4) Enforcing statutes or ordinances that directly interfered with the vested contractual rights of the

13  Plaintiffs.

14  55.      These official policies, customs, practices and/or directives of Defendant by Defendant COS,

15  DK, LM, GH, LH, and LB and Sheriff Tom Bosenko are causally and affirmatively linked to the

16  deprivation of Plaintiffs' constitutional rights.

17  56.      Defendants by Defendants COS, DK, LM, GH, LH, and LB and Sheriff Tom Bosenko had

18  the final decision-making authority in selecting and implementing the policies, customs, practices

19  and/or directives that caused Plaintiffs injuries.

20  57.      In performing their official duties and selecting and implementing these official policies,

21  customs, practices and/or directives, Defendants  COS, DK, LM, GH, LH, and LB and Sheriff Tom

22  Bosenko  acted intentionally, recklessly, oppressively, unjustifiably, and with gross and deliberate

23  indifference to Plaintiffs' constitutional rights.

24  58.      Throughout, Defendants' COS, DK, LM, GH, LH, and LB and Sheriff Tom Bosenko's

25  conduct was malicious and oppressive and was either intended to cause injury or was carried out

26  with deliberate indifference to and callous disregard of Plaintiff's rights.

14

59.     This conduct by defendants violated the 14th amendment and the Commerce Clause of the Constitution of the United States and 42 U.S.C. section 1983.

60.     This conduct by defendants and each of them was a substantial factor in causing physical, emotional and economic injuries to Plaintiff, in amounts to be proved at trial.

## THIRD CAUSE OF ACTION

### (Intention Interference With Contractual Relation)

61.     Plaintiff re-alleges and incorporates by this reference each and every allegation of paragraphs 1 through 63 as if fully set forth herein.

62.     Plaintiff MMCSC had a valid contract with Jeffrey Phinney for the lease of real property located at 37016 Main Street Burney, CA.

63.     Plaintiff MMCSC had a valid oral contract with Plaintiff Christopher Staffin for the payment of expenses and reasonable salary.

64.     Defendants and each of them knew of the contracts or through reasonable inquiry would have known of the contracts.

65.     Defendants and each of them intended to disrupt the performance of the contracts by the conduct alleged herein.

66.     Plaintiffs were both harmed by the intentional acts of Defendants and each of them alleged herein.

67.     The Conduct of the Defendants and each of them was a substantial factor in causing the harm of the Plaintiffs herein.

## FOURTH CAUSE OF ACTION

### (Bane Act Civil Code §52.1)

68.     Plaintiff re-alleges and incorporates by this reference each and every allegation of paragraphs 1 through 68, as if fully set forth herein.

15

69.     Defendants and each of them interfered with and/or attempted to interfere with Plaintiffs vested constitutional rights under the United States Constitution and the State Constitution as alleged herein above by threatening or committing violent acts.

70.     Plaintiffs reasonably believed that if they exercised their vested contractual rights Defendants and each of them would commit violence against them and or their property.

71.     Each of the Plaintiffs were harmed by the conduct of the Defendants and each of them as herein alleged.

72.     The conduct of the Defendants and each of them was a substantial factor in causing the each of the Plaintiff's harm.

## FIFTH CAUSE OF ACTION

### (Unrue Act Deprivation of Civil Rights of Disabled PersonCivil Code §51)

73     Plaintiff re-alleges and incorporates by this reference each and every allegation of paragraphs 1 through 73, as if fully set forth herein.

74.     Defendants and each of them denied Plaintiff Staffin his advantages, privileges and services because of his disability/medical condition.  Plaintiff Staffin is disabled and require medical marijuana pursuant to the recommendation.

75.     Defendants and each of them aided the denial of Plaintiff Staffins right to cultivate marijuana by the acts alleged herein.

76.     The motivating reason for the conduct of the Plaintiffs and each of them is their perception the disability/medical condition of Plaintiff Staffin.

77.     Plaintiff Staffin was harmed by the conduct.

78.     Defendants and each them was a substantial conduct in causing Plaintiff Staffin's harm.

1

## SIXTH CAUSE OF ACTION

2

### (Injunctive relief Civil Code §51, 52.1,)

3   79    Plaintiff re-alleges and incorporates by this reference each and every allegation of

4   paragraphs 1 through 78, as if fully set forth herein.

5   80.   The conduct of the Defendants and each of them is a violation of the Civil rights of each

6   of the plaintiffs under the United States Constitution, the California Constitution, Civil Code

7   §51, 52.1 and as such the Plaintiff's are entitled to a permanent injunction preventing the

8   Defendants' conduct.

9   81.   The conduct of the Defendants in their harassment, de facto banning of all  medical

10   marijuana cooperatives, dispensaries, operators and establishments in violation of California law

11   and the rights and privileges of the Plaintiffs.

12   82.   Plaintiffs are  seeking an order enjoining the illegal conduct of the individuals and the

13   Defendant COS from continuing to violate the rights and privileges of the Plaintiffs.

14

15        WHEREFORE, plaintiffs respectfully pray for judgment against each and all of the

16   defendants as follows:

17        a.    For special and general damages according to proof;

18        b.    For punitive damages according to proof;

19        c.    Injunctive relief;

20        d.    For attorneys' fees;

21        e.    For costs of suit; and

22

23        f.    For such other and further relief as the court may deem appropriate.

24   Dated:  January 7, 2013

25                              Michael A. Scheibli
                               Attorney for Plaintiff

26

1

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury of all claims and issues so triable in this action.

Dated:  January 7, 2013

By: _____
Michael A. Scheibli
Attorney for Plaintiff

C:\Users\mascheibli\Documents\MedicineManComplaint.wpd

18

No. _____        Complaint for Damages and Jury Trial Demand

VERIFICATION

**STATE OF CALIFORNIA, COUNTY OF SHASTA**

    I have read the foregoing  Complaint For Damages and To Enjoin Prospective Acts of Individual in Their Official and Unofficial Capacities and Jury Trial Demand and know its contents. I am a party to this action.  The matters stated in the foregoing document are true of my own knowledge except as to those matters which are stated on information and belief, and as to those matters I believe them to be true.

    I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: January 7, 2013

                                     Plaintiff Cris Staffin as CEO
                                       and Medicine Man Collective Spiritual
                                     Center Corporation, a Non-Profit Corporation

ENDORSED - FILED
in the Office of the Secretary of State
of the State of California

OCT 26 2010

**Mutual Benefit**

## Articles of Incorporation

### 1.

The name of the corporation is **Medicine Man Collective Spiritual Center.**

### 2.

**A.** This corporation is a non profit **Mutual Benefit Corporation** organized under the *Nonprofit Mutual Benefit Corporation Law*. The purpose of this corporation is to engage in any lawful act or activity, other than credit union business, for which a corporation may be organized under such law.

**B.** The specific purpose of this corporation is to **facilitate cannabis, taxed and regulated.** The corporation and its collective membership is limited to providing a means for facilitating and coordinating transactions between its members only.

### 3.

The name and address in the State of California of this corporation's initial agent for service is:

**Christopher Dale Staffin**
**37016 Main Street**
**Burney, California 96013**

### 4.

Notwithstanding any of the above statements of purposes and powers, this corporation shall not, except to an insubstantial degree, engage in any activities or exercise any powers that are not in furtherance of the specific purposes of this corporation.

Signature of Incorporator
Christopher Dale Staffin
Date: 10/25/10

# Exhibit A

# Medicine Man Collective Spiritual Center/ Corporate Mission Statement

Medicine Man Corporate Mission is to collectively organize a center where canna- medicines are produced and secured for 215 patients and their right to use within the Spirit of The Law.

## BYLAWS

1. All Officer(s) of Medicine Man Corporation must take a Solemn Oath to participate wholeheartedly embracing The Mission Statement and placing The Collective Whole before themselves acting always in GROUP CONSCIOUS decision making processes reinvesting time, effort, energy and created assets and resources to a deemed "reasonable" pay check voted in and approved by The Board of Directors at such point in time considered appropriate and feasible per overall entity growth.

2. Any Officer (s) or employee/ volunteer of Medicine Man Corporation found acting dishonestly with respect to collective decision making process or letter or Spirit of the Law will be terminated immediately upon completion of review and fact finding by the Board of Directors and vote as to disciplinary action. It is further stated that The First Officer has the authority and power to suspend any participant including other officer(s) in any and all matters related to Collective Business, Business Inter –Relationships and Business Communications while under suspicion of dishonesty pending a review and vote by The Board of Directors. Fact finding reviews and or suspensions will be deliberated upon within a period of 90 days form Written Notice of Suspension.

3. No-one participates while on suspension.

4. Volunteers and employees will ultimately be reviewed and approved or not by the Board of Directors within 90 days of initial participation. No one will be accepted for volunteer or employment prior to a full reference, resume and criminal/ credit history type background check and analysis by an acting officer who in turn reports to The Board of directors at the next scheduled Board Meeting.

5. All patients, Board Members, Officers, volunteers and employees shall remain " Anonymous " and related records and proprietary information deemed confidential at all times other than within the context of LEGAL SUPENA Criminal or Civil, and or is majority voted as Best Course Action for the betterment of The Collective as a Whole by The Board of Directors and its Officers.

Exhibit B

## COMMERCIAL LEASE

THIS COMMERCIAL LEASE (this "Lease") is made as of the First day of April, 2010 by and between the Landlord and the Tenant named below, who hereby covenant, contract and agree as follows:

1.    Basic Provisions. The following schedule of basic provisions is an integral part of this Lease. The capitalized terms defined in this Section 1 shall have the same meaning throughout the Lease. All other capitalized terms shall have the meanings assigned elsewhere in this Lease.

(a)    "Landlord": Jeff Phinney

Address:    37018 Main Street
Burney, California 96013

(b)    "Tenant": Medicine Man Collection, LLC
Chris Giauque, Individually

Address:    37016 Main Street
Burney, California 96013

(c) Premises: The building(s), the parking facilities, and other structures and improvements, landscaping, fixtures, appurtenances and other common areas now or hereafter placed, constructed or located thereon comprise the "Premises", all of which is located at 37016 Main Street, Burney, California 96013.

(e) Rent: The "Rent" payable by Tenant to Landlord shall be as follows: Tenant shall pay to Landlord as monthly Rent, without deductions, set-offs, prior notice or demand the sum of Six Hundred Dollars ($600.00) per month, in advance on the first day of each month, commencing on the date the term commences, and continuing during the term. Monthly rent for any partial month shall be prorated at the rate of 1/30th of the monthly rent per day. All rent shall be paid to Landlord at the address to which notices to Landlord are given.

(f)    Security Deposit: Six Hundred Dollars ($600).

(g)    Lease Term: The initial "Lease Term" shall be six (6) months from the

Exhibit 1

Tenant Initial

Exhibit C

Commencement Date (as defined in subsection (j) below). Tenant may extend the Lease Term by exercising the "Option to Renew" as provided in Exhibit A.

(h)    Commencement Date: The "Commencement Date" shall be April 1, 2010.

(i) Permitted Use: The "Permitted Use" is the legal medical cultivation and dispensation of cannabis and other restorative plants, and general office use.

(j) Exhibits: The following exhibits are attached hereto, incorporated herein, and made a part of this Lease for all purposes:

Exhibit A: Option to Renew

2.    Lease Grant.

Landlord hereby leases to Tenant and Tenant hereby leases from Landlord the Premises as described in Section 1(f) above.

3.    Condition of Premises.

(a) Landlord warrants to Tenant that on the Commencement Date the existing electrical, mechanical, plumbing, fire sprinkler, lighting, heating, ventilating and air conditioning ("HVAC") systems, and all other such elements of the Premises, shall be in good operating condition, and that all structural elements of any buildings on the Premises (inclusive of the roof, gutters and spouts, outer and bearing walls, doors, windows and foundation), and the parking areas, driveways, paving and landscaping shall be in good condition, free of material defects and in compliance with all Applicable Laws (as defined in Section 26(a)).

(b) Tenant's taking possession of the Premises on the Commencement Date shall constitute Tenant's acceptance of the Premises and acknowledgment that the Premises are in the condition required by this Lease.

4.    Rent.

On the first day of each calendar month during the Lease Term, Tenant shall pay to Landlord monthly in advance, without demand, deduction or setoff the Rent amount set forth in Section 1(g) above. All rental and other payments, if any, which are due hereunder shall be made payable to Landlord at the address set forth in Section 1(a) above, or at such other place as may from time to time be designated in writing by Landlord, in lawful money of the United States of America without any prior demand there for and without any deduction or setoff whatsoever.

5.    Use of Premises.

2                                    Tenant Initial [ _____ ]

Tenant shall use the Premises for the Permitted Use(s), as defined in Section 1(j) above, and for no other use without Landlord's consent, which shall not be unreasonably withheld or delayed. In connection with its use of and activities in and about the Premises, Tenant, at its expense, will comply with all Applicable Laws (as defined in Section 20(a) below). Tenant shall not use the Premises in any manner that will constitute waste, nuisance, or unreasonable annoyance to owners or occupants of adjacent properties.

## 6. Taxes.

Tenant shall pay all special assessments levied against the Premises. Tenant shall pay before delinquent all taxes, assessments, licenses, and other charges that are levied or assessed against Tenant's personal property installed or located in or about the Premises that become payable during the term. If requested by Landlord, Tenant shall furnish Landlord with satisfactory evidence of these payments. If any taxes on Tenant's personal property are levied against Landlord or Landlord's property, or if the assessed value of the Premises is increased by the inclusion of the value placed on Tenant's personal property, and if Landlord pays the taxes on any of these items, Tenant shall immediately repay the same to Landlord upon demand, and in default thereof the sum or sums so paid by Landlord, together with all interest, costs, and damages may at Landlord's option be added as additional Rent to the next installment of Rent becoming due fixed by this Lease, and shall for all purposes be deemed Rent due and payable on such day.

## 7. Utilities.

Throughout the term of this Lease, Tenant shall pay all charges and costs incurred for installation and use in connection with water, gas, electricity, telephone, sewer service, trash collection, janitorial service and all other utilities and services supplied to or for the Premises, and for all permits, licenses and authorizations in connection therewith.

## 8. Maintenance and Repair.

(a) Landlord. Except as otherwise provided in this Lease Landlord shall be responsible, at Landlord's own cost and expense, for maintaining, in good condition and repair, the following: (i) the structural parts of the buildings and other improvements on the Premises, which structural parts include the foundations, bearing and exterior walls, (excluding glass and floors), sub-flooring and roof (excluding sky lights) (ii) window frames, and other improvements of the Premises.

(b) Tenant. Except as provided in this Section 8, Tenant at its cost and expense shall maintain, in good condition and repair, all portions of the Premises, including without limitation, all Landlord shall repair the premises if they are damaged by a) causes outside the premises over which Tenant has no control; b) acts or omissions of Landlord, or its

3

Tenant Initial 

authorized representatives; or c) Landlord's failure to perform its obligations under this section. Landlord shall have thirty (30) days after notice from Tenant to commence to perform its obligations under this section, except that Landlord shall perform its obligations as soon as reasonably possible if the nature of the problem presents a hazard or emergency. If Landlord does not perform its obligations within the time limitations in this section, Tenant can perform the obligations and have the right to be reimbursed for the sum it actually expends in the performance of Landlord's obligations. If Landlord does not reimburse Tenant within thirty (30) days after demand from Tenant, absent a good faith dispute, Tenant shall not the right to withhold from future Rent the sums Tenant has expended.

Except as provided in this Section 8, Tenant at its cost shall maintain, in good condition, all portions of the Premises, including without limitation, all Tenant's personal property, all interior walls, floors, leasehold improvements, HVAC serving the Premises, signs, plate glass and show windows, plumbing and electrical and routine roof maintenance. Tenant shall be liable for any damage to the Premises resulting from the acts or omissions of Tenant or its authorized representatives.

(c) HVAC System. As of the Commencement Date, Tenant shall be responsible for ordinary maintenance and repair of the HVAC equipment serving the Premises. The foregoing shall not be deemed to include capital expenditure for replacement of the HVAC system provided that Landlord shall not be responsible for damage to the HVAC caused by the simultaneous use of swamp coolers and HVAC. Tenant acknowledges that Landlord makes no representation or warranty that the current HVAC system is adequate for Tenant's anticipated use of the Premises. Tenant has inspected the Premises and determined that the existing facility to be adequate for its intended use.

## 9. Security and Signage.

(a) Security. Tenant shall provide security to the Premises, including inside window guards and an alarm and electronic security system. All security measures provided shall be non-intrusive and shall be Tenant's responsibility to remove all security items installed upon surrendering the Premises. Tenant shall be responsible for all costs of removal and/or repair incurred by Landlord to remove any and all security measures and/or items installed and left by Tenant.

(b) Signage. All signage shall be subject to the approval by Landlord. Landlord shall not unreasonably withhold Landlord's consent to any signage proposed by Tenant. Tenant shall be responsible for all costs of removal and/or repair incurred by Landlord to remove any and all signage installed and left by Tenant.

## 10. Alterations by Tenant.

(a) Alterations. Except as provided above, Tenant will not make alterations, changes or improvements to the Premises without first submitting to Landlord plans and specifications and obtaining the prior written consent of Landlord, which consent shall

4

4

Tenant Initial [      ]

not be unreasonably withheld, conditioned or delayed. All work done by Tenant shall be performed in a good and workmanlike manner by a contractor approved by Landlord, in compliance with Applicable Laws. Any such work performed by Tenant shall be performed so as not to alter the exterior appearance of the Premises or adversely affect the structure or safety of systems or services of the Premises; and shall comply with all building, safety, fire and other codes and governmental and insurance requirements. All alterations, changes or improvements of a permanent nature made or installed by Tenant to the Premises shall become the property of Landlord at the expiration or early termination of this Lease, but Tenant shall have the right to remove any trade fixtures or other equipment, provided Tenant repairs and restores any damage caused to the Premises by such removal. Tenant shall not be required to remove any subsequent alterations, changes or improvements made to the Premises unless Landlord gives notice to Tenant at the time Landlord responds to Tenant's request for Landlord's consent that such alterations, changes or improvements will have to be removed by Tenant upon the expiration or early termination of this Lease.

(b) Mechanics' Liens. Tenant shall pay all costs for construction done by it or caused to be done by it on the Premises as permitted by this Lease. Tenant shall keep the Premises free and clear of all mechanics' liens resulting from construction done by or for Tenant.

Tenant shall have the right to contest the correctness or the validity of any such lien if, immediately upon demand by Landlord, Tenant procures and records a lien release bond issued by a corporation authorized to issue surety bonds in California in an amount equal to no less than the amount of the claim of the lien. The bond shall meet the requirements of California Civil Code Section 3143 and shall provide for the payment of any sum that the claimant may recover on the claim (together with costs of suit, if it recovers in the action).

(c) Supplemental Equipment. So long as Tenant is not then in default, Tenant shall have the right to install supplemental equipment, at Tenant's sole cost and expense, on the Premises, subject to all applicable governmental rules, regulations, ordinances and codes, and is approved in advance by Landlord (which approval shall not be unreasonably withheld, conditioned or delayed) and is within the allowable structural loading of any building on the Premises.

## 11. Assignment and Subletting.

Tenant shall not, without Landlord's prior written consent (i) assign, convey, mortgage, pledge, encumber or otherwise transfer (whether voluntarily or otherwise) this Lease or any interest under it, (ii) allow any transfer thereof by operation of law, (iii) sublet the Premises or any part thereof, or (iv) permit the use or occupancy of the Premises or any part thereof for any purpose other than those to which Landlord has consented; however, Landlord shall not unreasonably withhold Landlord's consent to any assignment, sublease or use proposed by Tenant. Any consent by Landlord to an assignment of this Lease by Tenant or to a subletting of the Premises by Tenant shall not have the effect of

5

5

Tenant Initial [         ]

releasing Tenant from Tenant's obligations hereunder, which shall continue in full force and effect after any such permitted assignment or subletting.

12. Indemnity.

(a) Tenant shall protect, indemnify, save harmless and defend Landlord and the Premises from and against any and all liabilities, obligations, claims, damages, penalties, causes of action, costs and expenses, and including, without limitation, attorneys' fees and expenses imposed upon, incurred by or asserted against Landlord or the Premises by reason of any accident, injury to or death of persons, or loss of or damage to property occurring on or about the Premises or any other matter or thing arising out of the use or occupation of the Demised Premises or caused by the negligence, errors, acts or omissions of Tenant, or of Tenant's agents, contractors or employees; provided, however, that Tenant's indemnity obligation herein shall not be applicable to the extent that any injury or damage or other claim results from the act or omission of Landlord or of Landlord's agents, contractors or employees.

(b) Landlord shall protect, indemnify, save harmless and defend Landlord and the Premises from and against any and all liabilities, obligations, claims, damages, penalties, causes of action, costs and expenses, and including, without limitation, attorneys' fees and expenses imposed upon, incurred by or asserted against Tenant by reason of the acts or omissions of Landlord or of Landlord's agents, contractors or employees.

(c) A party's obligation of indemnity herein is conditioned upon the indemnified party: (i) promptly notifying the indemnifying party of the claim; (ii) providing the indemnifying party with all reasonable information and assistance, at the indemnifying party's expense, to defend or settle such a claim; and (iii) at the indemnifying party's request, granting the indemnifying party authority and control of the defense or settlement of such claim. If a settlement would alter, impair or reduce the scope of the indemnified party's rights under this Lease, the indemnifying party shall not settle any such claim without the indemnified party's prior written consent, which shall not be unreasonably withheld or delayed. The indemnified party reserves the right to retain separate counsel, at its own expense, to participate in the defense and settlement of any such claim.

(d) A party's obligation of indemnity shall not be limited to damages, compensation or benefits payable under insurance policies, workers' compensation acts, disability benefit acts or other employees' benefit acts, and shall survive the expiration or earlier termination of this Lease.

13. Insurance.

(a) Tenant shall, at its own cost, carry and maintain general public liability insurance against claims for personal injury, including death and property damage in or about the Premises (excluding Tenant's property), such insurance to be in such amounts as

6

Tenant Initial 

Landlord (or its mortgagees) may deem appropriate in an amount not less than Two Thousand Dollars ($2,000.00). In addition, Landlord agrees to carry fire and extended coverage insurance on the Premises and the permanent improvements thereon, on a replacement cost basis and loss of rents. Such insurance may expressly exclude property paid for by Tenant located in, or constituting a part of the Premises. Such insurance shall afford coverage for damages resulting from fire and perils covered by extended coverage insurance. Landlord may carry such other additional insurance coverage as Landlord or Landlord's mortgagee deems appropriate including coverage for loss of rents. All such insurance shall be procured from a responsible insurance company or companies authorized to do business in the State where the Premises are located. All of Tenant's insurance shall name Landlord as an additional insured.

(b) Tenant shall, at its own cost, at all times during the term of this Lease and any extensions hereof, procure and maintain insurance for hazard, fire and extended coverage on Tenant's Property and the contents of the Premises in an amount equal to full replacement cost thereof, and commercial general liability insurance, including coverage for bodily injury, property damage, personal injury (employee and contractual liability exclusions deleted), products and completed operations, contractual liability, owner's protective liability, host liquor legal liability and broad form property damage with the following limits of liability: Two Million Dollars ($2,000,000.00) each occurrence combined single limit for bodily injury, property damage and personal injury; Two Million Dollars ($2,000,000.00) aggregate for bodily injury and property damage for products and completed operations. All such insurance shall be procured from a responsible insurance company or companies authorized to do business in the State where the Premises are located. All such policies shall name Landlord as an additional insured, and shall provide that the same may not be cancelled or altered except upon thirty (30) days prior written notice to Landlord. All insurance maintained by Tenant shall be primary to any insurance provided by Landlord. If Tenant obtains any general liability insurance policy on a claims-made basis, Tenant shall provide continuous liability coverage for claims arising during the entire term of this Lease, regardless of when such claims are made, either by obtaining an endorsement providing for an unlimited extended reporting period in the event such policy is cancelled or not renewed for any reason whatsoever or by obtaining new coverage with a retroactive date the same as or earlier than the expiration date of the cancelled or expired policy. Tenant shall provide certificate(s) of such insurance to Landlord upon commencement of the Lease term and at least thirty (30) days prior to any annual renewal date thereof and upon request from time to time and such certificate(s) shall disclose that such insurance names Landlord as an additional insured, in addition to the other requirements set forth herein. The limits of such insurance shall not, under any circumstances, limit the liability of Tenant hereunder.

(c) To the extent allowable without invalidating any insurance coverage of Landlord or Tenant, and subject to the provisions of Subsection (d) below, Landlord hereby releases Tenant and Tenant hereby releases Landlord from and against any and all claims, demands, liabilities or obligations whatsoever for damage to the property or loss of rents or profits of either Landlord or Tenant resulting from or in any way connected with any fire or other casualty whether or not such fire or other casualty shall have been caused by

7

Tenant Initial [ ]

the negligence or contributory negligence of either Landlord or Tenant or by any agent, associate or employee of either of them.

(d) Each party agrees to use its best efforts to include in each of its policies insuring against loss, damage or destruction by fire or other casualty a waiver of the insurer's right of subrogation against the other party, or if such waiver should be unobtainable or unenforceable (i) an express agreement that such policy shall not be invalidated if the insured waives the right of recovery against any party responsible for a casualty covered by the policy before the casualty, or (ii) any other form of permission for the release of the other party. If such waiver, agreement or permission shall not be, or shall cease to be, obtainable without additional charge or at all, the insured party shall so notify the other party promptly after learning thereof. In such case, if the other party shall so elect and shall pay the insurer's additional charge therefore, such waiver, agreement or permission shall be included in the policy, or the other party shall be named as an additional insured in the policy. Each such policy which shall so name a party hereto as an additional insured shall remain, if obtainable, agreements by the insurer that the policy will not be cancelled without at least thirty (30) days prior notice to both insurers and that the act or omission of one insured will not invalidate the policy as to the other insured. Any failure by either party, if named as an additional insured, promptly to endorse to the order of the other party, without recourse, any instrument for the payment of money under or with respect to the policy of which the other party is the owner or original or primary insured, shall be deemed a default under this Lease.

## 14. Casualty.

The Tenant agrees to notify Landlord of any damages to the Premises by fire or other casualty and also of any dangerous or hazardous condition within the Leased Premises immediately upon the occurrence of such fire or other casualty or discovery of such condition.

Upon occurrence of a fire, repairs shall be made by Landlord on any item required by Landlord to be maintained by Landlord as soon as reasonably may be done unless the costs of repairing the Premises exceed 25% of the replacement cost of the building in which case the Landlord may, at its option, terminate this lease by giving Tenant written notice of termination within 30 days of the date of the occurrence.

If the Landlord does not terminate this Lease pursuant to the paragraph above, then Landlord has 30 days after the date of occurrence to give written notice to Tenant setting forth its unqualified commitment to make all necessary repairs or replacements, the projected date of commencement of such repairs, and the Landlord's best good faith estimate of the date of completion of the same. If the Landlord fails to give such notice, or if the date of completion is more than ninety (90) days after the date of the occurrence, then the Tenant may, at its option, terminate this lease and the Landlord will be obliged to refund to the Tenant any Rent allocable to the period subsequent to the date of the fire.

## 15. Condemnation.

8

Tenant Initial 

If, during the term of this Lease or any extension or renewal thereof, there is any taking of all or any part of the Premises, buildings, other improvements or land of which the Premises are a part or any interest in this Lease by condemnation, the rights and obligations of the parties shall be determined as follows:

(a) If the Premises are totally taken by condemnation this Lease shall terminate as of the date of taking, which is the date the condemner has the right of possession of the property being condemned.

(b) If any portion of the Premises is taken by condemnation, this Lease shall remain in effect, except that the Tenant may elect to terminate the Lease if the remaining portion of the building or other improvements or the parking area that are a part of the Premises is rendered unsuitable for Tenant's continued use of the Premises. If Tenant elects to terminate this Lease, Tenant must exercise its right to terminate pursuant to this section by giving notice to the Landlord within thirty (30) days after the nature and extent of the taking have been finally determined, and the Lease shall terminate as of the date of taking, but in no event earlier than thirty (30) days after the notice from the Tenant. If the Lease remains in full force and effect on the date of taking, the monthly rental shall be adjusted by an amount that is in the same ratio to the monthly Rent as the value of the area of the portion of the Premises taken bears to the total value of the Premises immediately before the date of taking. The award shall belong to and be paid to the Landlord except that Tenant shall receive from the award the sum attributable to Tenant's improvements or alterations made in the Premises by the Tenant in accordance with this Lease which Tenant's improvements and alterations cannot be removed from the Premises.

## 16. Events of Tenant Default.

Each of the following shall be deemed a default by Tenant and a breach of this Lease:

(a) Failure to pay Rent on the due date thereof and such failure continues for five (5) days or more following receipt of Landlord's notice of such failure;

(b) Failure by Tenant to observe, keep and perform any of the terms and conditions, agreements and provisions contained in the Lease.

(c) The abandonment of the Premises by the Tenant; the filing of either voluntary or involuntary proceedings against Tenant in the bankruptcy court; the making by the Tenant of a general assignment for the benefit of creditors; the taking by the Tenant of the benefit of any insolvency act or law; the appointment of a permanent receiver or trustee in bankruptcy for the Tenant's property; the appointment of a temporary receiver which is not vacated or set aside within ninety (90) days from the date of such appointment.

## 17. Landlord's Remedies in the Event of Tenant Default.

9

Tenant Initial 

Landlord shall have the following remedies if Tenant commits a default. These remedies are not exclusive; they are cumulative in addition to any remedies now or later allowed by law.

(a) Landlord can continue this Lease in full force and effect, and the Lease will continue in effect as long as Landlord does not terminate Tenant's right to possession, and Landlord shall have the right to collect Rent when due. During the period Tenant is in default, Landlord can enter the Premises and relet them, or any part of them, to third parties for Tenant's account. Tenant shall be liable immediately to Landlord for all costs Landlord incurs in reletting the Premises, including without limitation, broker's commissions, expenses of remodeling the Premises required by the reletting, and like costs. Reletting can be for a period shorter or longer than the remaining term of this Lease. Tenant shall pay to Landlord the Rent due under this Lease on the date the Rent is due, less the Rent Landlord receives from any reletting. No act by Landlord allowed by this section shall terminate this Lease unless Landlord notifies Tenant that Landlord elects to terminate this Lease. After Tenant's default and for as long as Landlord does not terminate Tenant's right to possession of the Premises, if Tenant obtains Landlord's consent, Tenant shall have the right to assign or sublet its interest in this Lease, but Tenant shall not be released from liability. Landlord's consent to a proposed assignment or subletting shall not be unreasonably withheld.

(b) Landlord can terminate Tenant's right to possession of the Premises at anytime. No act by Landlord other than giving notice to Tenant shall terminate this Lease. Acts of maintenance, efforts to relet the Premises, or the appointment of a receiver on Landlord's initiative to protect Landlord's interest under this Lease shall not constitute a termination of Tenant's right to possession. On termination, Landlord has the right to recover from Tenant: i) the worth, at the time of the award, of the unpaid Rent that had been earned at the time of termination of this Lease; ii) the worth, at the time of the award, of the amount by which the unpaid Rent that would have been earned after the date of termination of this Lease until the time of award exceeds the amount of the loss of Rent that Tenant proves could have been reasonably avoided; (iii) the worth, at the time of the award, of the amount by which the unpaid Rent for the balance of the term after the time of award exceeds the amount of the loss of Rent that Tenant proves could have been reasonably avoided; and iv) any other amount, and court costs, necessary to compensate Landlord for all detriment proximately caused by Tenant's default.

"The worth, at the time of award", as used in (i) and (ii) of this section, is to be computed by allowing interest at the rate of ten percent (10%) per annum. "The worth, at the time of award," as referred to in (iii) of this section, is to be computed by discounting the amount at the discount rate of the Federal Bank of San Francisco at the time of the award, plus one percent (1%).

(c) If Tenant is in default of this Lease Landlord shall have the right to have a receiver appointed to collect Rent and conduct Tenant's business. Neither the filing of a petition for the appointment of a receiver nor the appointment itself shall constitute an election by Landlord to terminate this Lease.

10                                    Tenant Initial [    ]

(d) Rent not paid when due shall bear interest from the date due until paid at the maximum rate an individual is permitted by law to charge.

(e) Tenant acknowledges that the late payment by Tenant to Landlord of Rent will cause Landlord to incur costs not contemplated by this Lease, the exact amount of such costs being extremely difficult and impracticable to fix. Such costs include, without limitation, processing and accounting charges, and late charges that may be imposed on Landlord by the terms of any encumbrance and note secured by any encumbrance covering the Premises. Therefore, if any installment of Rent due from Tenant is not received by Landlord when due, Tenant shall pay to Landlord an additional sum of ten percent (10%) of the overdue Rent as a late charge. The parties agree that this late charge represents a fair and reasonable estimate of the costs that Landlord will incur by reason of late payment by Tenant. Acceptance of any late charge shall not constitute a waiver of Tenant's default with respect to the overdue amount, or prevent Landlord from exercising any of the other rights and remedies available to Landlord.

11

Tenant Initial [      ]

**18. Landlord's Default.**

If Landlord should default in the performance any Landlord obligation under this Lease (including, without limitation, Landlord's maintenance obligations under Section 8(a)) or if Landlord should fail to make any payment which Landlord agrees to make, then Tenant without being obligated to and without thereby waiving such default, shall have the following remedies, which remedies shall be cumulative and shall be in addition to those remedies which Tenant may have at law or in equity: (i) if Tenant provides notice to Landlord of any default of Landlord of its obligations (other than payment of money due to Tenant under this Lease and Landlord shall fail to cure such default within thirty (30) days (unless otherwise so provided under this Lease) following the receipt of such notice (or as soon as possible under all the circumstances in the event of an emergency) Tenant may perform such obligation, or pay any sums due to any third party, as Landlord's agent; provided, however, if such default cannot be cured within the thirty (30) day period, Landlord shall not be in default if Landlord commences to cure within such thirty

(30) day period and diligently pursues such cure to completion as soon as reasonably possible. The full and reasonable amount incurred by Tenant to perform such obligation or make such payment, together with reasonable attorney's fees incurred instituting, prosecuting or defending any action or proceeding by reason of any such default by Landlord hereunder shall be paid by Landlord to Tenant.

11

13



Tenant initial [____]

**19. Covenant of Quiet Enjoyment.**

Except in the event, and to the extent of a condemnation or damage to or destruction of the Premises by fire or other casualty, Landlord hereby covenants and agrees that if Tenant shall perform all of the covenants and agreements stipulated to be performed on Tenant's part under this Lease, Tenant shall at all times during the Lease Term have peaceable and quiet enjoyment and possession of the Premises without hindrance from Landlord or any person or persons lawfully claiming the Premises by or through Landlord.

**20. Surrender of Premises.**

Upon the expiration or earlier termination of the Lease Term, Tenant shall peaceably surrender to Landlord the Premises, including the alterations, improvements and changes (except as provided in Sections 9 and 10) other than Tenant's fixtures remaining the property of Tenant, broom-clean and in the condition the same were in on the Commencement Date, subject only to (i) ordinary and customary wear and tear, (ii) damage resulting from a fire or other casualty, and damage caused by Landlord, its employees, contractors, agents or other tenants, if any.

**21. Holding Over.**

If Tenant should holdover after the expiration of the Lease Term, with the consent of Landlord, express or implied, such tenancy shall be from month-to-month only, and not a renewal hereof, and Tenant agrees to pay monthly Rent at the then current rate and all other charges as provided herein, and also to comply with all covenants of this lease for the time Tenant holds over. Tenant shall be entitled to possession until Landlord has given Tenant thirty (30) days notice that such month to month tenancy shall be terminated; otherwise, notice is only required as hereinafter provided as notice of default.

If Tenant shall hold over without the consent of Landlord, express or implied, then Tenant shall be construed to be a tenant at sufferance at one hundred twenty-five percent (125%) of the then current monthly Rent amount, prorated by the day until possession is returned to Landlord.

Tenant's holding over beyond the expiration of the notice period of a lawful written notice of termination constitutes holding over without the consent of the Landlord, and Tenant shall be construed to be a tenant at sufferance, at one hundred twenty-five percent (125%) of the then current monthly Rent amount, prorated by the day until possession is returned to Landlord, without limitation to any additional remedies and rights of recovery of Landlord under applicable law.

**22. Subordination.**

Subject to Landlord's covenant of Quiet Enjoyment under Section 19 above, this Lease shall be subordinate to all deeds of trust and ground leases now or hereafter

14                                    Tenant Initial

encumbering or affecting the Land, the buildings and other improvements of which the Premises are a part, and all refinancings, replacements, renewals, modifications, extensions or consolidations thereof.

Tenant agrees to attorn to any mortgagee, ground lessor, trustee under a deed of trust or purchaser at a foreclosure sale or trustee's sale as Landlord under this Lease. Landlord and Tenant each hereby covenant and agree to execute and deliver, within ten (10) business days after such request from the other, in recordable form, such commercially reasonable instruments as may be required to acknowledge and further evidence, (i) in the case of Tenant, the subordination of this Lease and/or the attornment by Tenant to such mortgagee, ground lessor, trustee or purchaser, or (ii) in the case of Landlord and Lender, a non-disturbance agreement in favor of Tenant.

If within the required time after submission of any such instrument by Landlord, Tenant fails to execute and deliver such instrument, then Landlord shall give Tenant a reminder notice and request, and if within an additional five (5) business days thereafter Tenant fails to execute and deliver such instruments, then Landlord is hereby authorized, but not obligated, to execute a counterpart of such instrument as attorney-in-fact for Tenant for such purposes only. If Landlord fails to execute and deliver such non-disturbance agreement within twenty (20) days after such request by Tenant, then Tenant shall give Landlord a reminder notice and request, and if within such additional five (5) days thereafter Landlord fails to deliver such non-disturbance agreement due to the lender's failure to execute, then Tenant shall not be required to execute a subordination of Lease or attornment.

## 23. Estoppel Certificate.

Each party, within ten (10) days after notice from the other party, shall execute and deliver to the other party in recordable form a certificate stating that this lease is unmodified and in full force and effect, or in full force and effect as modified, and stating the modifications. The certificate also shall state the amount of monthly rent, the dates to which the rent has been paid in advance, and the amount of any security deposit or prepaid rent. Failure to deliver the certificate within the ten days shall be conclusive upon the party failing to deliver the certificate for the benefit of the party requesting the certificate and any successor to the party requesting the certificate, that this lease is in full force and effect and has not been modified except as may be represented by the party requesting the certificate.

## 24. Sale or Transfer of Premises.

If the Landlord sells or transfers all or any portion of the real property of which the Premises is a part, Landlord, on consummation of the sale or transfer, shall be released from any liability thereafter accruing under this Lease if Landlord's successor has assumed in writing, for the benefit of Tenant, Landlord's obligations under this Lease. If any security deposit or prepaid rent has been paid

Tenant Initial

by Tenant, Landlord can transfer the security deposit or prepaid rent to Landlord's successor and on such transfer Landlord shall be discharged from any further liability in reference to the security deposit or prepaid rent.

## 25. Environmental Matters; Indemnity.

(a) Tenant shall not cause or permit any Hazardous Substance to be brought upon, kept, used or released in or about the Premises in violation of any Environmental Laws. If (i) Tenant breaches the representation and/or obligations stated in the preceding sentence or (ii) Tenant otherwise causes contamination of the Premises by any Hazardous Substance during the Lease Term in violation of any Environmental Laws, then Tenant shall indemnify, protect, defend and hold Landlord and Landlord's members harmless from any and all claims, judgments, damages, penalties, fines, costs, liabilities and losses (including diminution in value of the Premises, damages for the loss of or restriction on use of the Premises, and sums paid in settlement of claims, reasonable attorneys' fees, consultant fees and expert fees) resulting therefrom. The foregoing indemnification by Tenant includes costs incurred in connection with any investigation of site conditions or any cleanup, remedial, removal or restoration work required by any federal, State, or local governmental agency or political subdivision because of any Hazardous Substance being present in violation of any Environmental Laws in or about the Premises or in the soil or ground water on or under the Premises. Without limiting the foregoing, if the presence of any Hazardous Substance on or about the Premises caused, permitted or allowed by Tenant results in any contamination of any portion thereof in violation of any Environmental Laws, Tenant shall promptly take all actions at its sole cost as are required by Governmental Authorities under Environmental Laws to investigate or remediate such Hazardous Substance, subject to obtaining Landlord's prior written consent to the actions to be taken by Tenant. Landlord may require its prior written consent to the selection of the contractors and other experts involved in the inspection, testing and removal or abatement activities, the scope of activities to be performed, the manner and method for performance of such activities, and such other matters as may be required or requested by Landlord for the continued use of the Premises and the safety of the Premises and all occupants thereof. Tenant shall provide Landlord with such documentation and information requested by Landlord with respect to any inspection, testing, remediation, removal, abatement, or other activities undertaken by or on behalf of Tenant under this Section 25. The obligations and liabilities of Tenant under this Section 25 shall survive the termination of this Lease.

(b) Landlord warrants and represents that it has no knowledge of any Environmental Claim pending or threatened against Landlord; and that there are no past or present actions, activities, circumstances, conditions, events or incidents, including, without limitation, the release, emission, discharge, presence or disposal of any Hazardous Substance, that could form the basis of any Environmental Claim against Landford or any occupant of the Premises (including Tenant), or otherwise result in any costs or liabilities under

16

Tenant Initial  )

Lien" law, the Toxic Substances Control Act and any other federal, state or local statute, law, ordinance, code, rule, regulation, order or decree regulating, relating to or imposing liability or standards of conduct concerning any Hazardous Materials or any other hazardous, toxic or dangerous waste, substance, constituent or other substance, whether solid, liquid or gas, as now or at any time hereafter in effect.

(iii) *"Hazardous Substance"* shall mean any hazardous substance, pollutant or contaminant defined as such in (or for the purpose of) any Environmental Laws, and shall include, without limitation, petroleum (including crude oil or any fraction thereof), creosote and any waste associated therewith, any radioactive material and asbestos in any form or condition.

## 26. Miscellaneous.

(a) *"Applicable Laws"*. As used herein, the term "Applicable Laws" shall mean all laws, statutes, ordinances, regulations, guidelines or requirements now in force or hereafter enacted and the requirements of any governmental authority having jurisdiction over the Premises, board of fire underwriters, utility company serving the Premises or other similar body now or hereafter constituted, relating to or affecting the condition, use or occupancy of the Premises, including without limitation, Title III of The Americans with Disabilities Act of 1990, all regulations issued thereunder, and the Accessibility Guidelines for Buildings and Facilities issued pursuant thereto, as the same are in effect on the date of this Lease and as hereafter amended.

(b) Governing Law. This Lease shall be construed under and in accordance with the laws of the State of California.

(c) Time Is of the Essence; Business Days. The time of the performance of all of the covenants, conditions and agreements of this Lease is of the essence. The term "business days" as used herein shall mean all calendar days other than Saturday, Sunday, New Years Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day and Christmas Day.

(d) Force Majeure. Wherever there is provided in this Lease a time limitation for performance by Landlord or Tenant of any obligation (except for the payment of money), including but not limited to obligations related to construction, repair, maintenance or service, the time provided for shall be extended for as long as and to the extent that delay in compliance with such limitation is due to an act of God, governmental control or other factors beyond the reasonable control of Landlord or Tenant, as applicable.

(e) Interpretation. Whenever any word is used in this agreement in the masculine gender, it shall also be construed as being used in the feminine and neuter genders, and singular usage shall include the plural and vice versa, all as

18

Tenant Initial [        ]

Environment
al Law.

(c) If (i) Landlord breaches the foregoing representations and/or obligations or (ii) contamination of the Premises by any Hazardous Substance has otherwise occurred prior to the Lease Term or during the Lease Term through no fault of Tenant, in violation of any Environmental Laws, then Landlord shall indemnify, protect, defend and hold Tenant and Tenant's members harmless from any and all claims, judgments, damages, penalties, fines, costs, liabilities and losses, damages for the loss of or restriction on use of the Premises, and sums paid in settlement of claims, reasonable attorneys' fees, consultant fees and expert fees) resulting therefrom. The foregoing indemnification by Landlord includes costs incurred in connection with any investigation of site conditions or any cleanup, remedial, removal or restoration work required by any federal, State, or local governmental agency or political subdivision because of any Hazardous Substance being present in violation of any Environmental Laws in or about the Premises or in the soil or ground water on or under the Premises. Without limiting the foregoing, if the presence of any Hazardous Substance on or about the Premises prior to the Lease Term or during the Lease Term through no fault of Tenant results in any contamination of any portion thereof in violation of any Environmental Laws, Landlord shall promptly take all actions at its sole cost as are necessary to return the Premises to the condition existing prior to the introduction of any such Hazardous Substance. Such remediation shall be accomplished in a manner that does not interfere with or disrupt Tenant's conduct of business on the Premises. If however such remediation does materially interfere with or disrupts Tenant's conduct of business on the Premises, then Tenant shall be entitled to terminate the lease upon sixty (60) days written notice to Landlord. The obligations and liabilities of Landlord under this Section 25 shall survive the termination of this Lease.

(d) For purposes of this Section 25, the following terms shall have the following meanings:

(i) "Environmental Claim" means any claim, action, cause of action, suit, proceeding, investigation, order, demand or notice (written or oral) by any person or entity alleging potential liability (including, without limitation, potential liability for investigatory costs, cleanup costs, governmental response costs, natural resources damages, property damages, personal injuries, or penalties) arising out of, based on or resulting from (a) the presence, or release into the environment, of, or exposure to, any Hazardous Substances on, under or about the Premises, Buildings or Real Estate, or (b) circumstances forming the basis of any violation, or alleged violation, of any Environmental Law.

(ii) "Environmental Laws" shall mean the Resource Conservation and Recovery Act, the Comprehensive Environmental Response, Compensation and Liability Act, any so-called "Super Fund" or "Super

17

Tenant Initial [  ]

the context
shall require.

(g) Severability. No provision of this Lease shall be construed or interpreted in any manner which would render such provision invalid. If any provision of this Lease is held to be invalid, such invalid provision shall be deemed to be severable from and shall not affect the validity of the remainder of this Lease.

(h) Binding Effect. Subject to the limitations on subletting and assignment set forth in this Lease, all covenants, promises, conditions, representations and agreements herein contained shall be binding upon and apply and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, successors and assigns.

(i) Access to Premises. Tenant agrees that Landlord and its agents may enter the Premises with no less than twenty-four (24) hours prior notice (except in the case of an emergency, in which case Landlord shall have the right to immediate access) for the purpose of inspecting and making such repairs (structural or otherwise), additions, improvements, changes or alterations to the Premises as may be permitted or required under this Lease or as Landlord may reasonably elect, and to exhibit the same to prospective purchasers, mortgagees or tenants. Landlord's entries in the Premises shall not unreasonably interfere with Tenant's use and occupancy of the Premises for the Permitted Use, and shall be subject to Tenant's commercially reasonable security requirements.

(j) Notices. Notices hereunder must be hand-delivered or sent by nationally recognized overnight courier or by certified mail, return receipt requested, postage prepaid, addressed, if to Landlord, at the address specified for Landlord in Paragraph 1(a) above, and if to Tenant, at the address specified for Tenant in Paragraph 1(b) above, or to such other address as may be specified by written notice actually received by the other party. Notice shall be deemed given upon tender of delivery (in the case of a hand-delivered notice) or upon posting of same with the overnight courier service or in an official depository of the United States Postal Service (in the case of a certified or registered letter), provided that no notice of either party's change of address shall be effective until fifteen (15) days after the addressee's actual receipt thereof.

(k) Attorneys' Fees. In the event either party is in default beyond any applicable grace or notice period in the performance of any of the terms of this Lease and the other party employs an attorney in connection therewith, the non-prevailing party agrees to pay the prevailing party's reasonable attorneys' fees.

(l) No Attornment. All checks tendered to Landlord as and for the Rent required hereunder shall be deemed payments for the account of Tenant. Acceptance by Landlord of Rent from anyone other than Tenant shall not be deemed to operate as an attornment to Landlord by the payer of such Rent or as a consent by Landlord to an assignment of this Lease or subletting by Tenant of the Premises to such payer, or as a modification of any of the provisions of this

19

Tenant Initial [    ]

Lease

(m) Arms-Length Transaction. This Lease has been entered into by the undersigned after arms-length negotiation, with each party acknowledging that it and its counsel, if it so chooses, have had an opportunity to review this Lease, and therefore, the parties agree that this Lease shall not be construed against Landlord on the ground that Landlord's representatives prepared this Lease.

(n) Waiver. No covenant, term or condition of this Lease, nor the breach or default thereof, shall be deemed waived, except by written consent of the party against whom such waiver is claimed, and any waiver of the breach of any covenant, term or condition will not be deemed to be a waiver of any preceding or succeeding breach of the same or any other covenant, term or condition. Acceptance by Landlord of any performance by Tenant after the time the same was due will not constitute a waiver by Landlord of the breach or default of any covenant, term or condition unless otherwise expressly agreed to by Landlord in writing.

(o) Counterparts. This Lease may be executed in several counterparts, each of which will be deemed an original, and all of which will constitute but one and the same instrument.

(p) Brokers. Tenant and Landlord each represent and warrant that they have not been represented by any broker or agent in connection with the negotiation or execution of this Lease. Tenant shall indemnify and hold harmless Landlord from and against all claims (including costs of defending against and investigating such claims) of any other broker or agent or similar party claiming by, through or under Tenant in connection with this Lease. Landlord shall indemnify and hold harmless Tenant from and against all claims (including costs of defending against and investigating such claims) of any other broker or agent or similar party claiming by, through or under Landlord in connection with this Lease.

(q) Entire Agreement and Amendments. This Lease is the only agreement between the parties hereto and their representatives and agents. There are no representations or warranties between the parties other than the representations and warranties contained in this document. No agreement or amendment shall be effective to change, modify or terminate this Lease in whole or in part unless such agreement or amendment is in writing and duly signed by the party against whom enforcement of such change, modification or termination is sought.

[Signature Page follows]

20

Tenant Initial 

## SIGNATURE PAGE

IN WITNESS WHEREOF, the parties hereto have executed and delivered this Lease as of the day and year first above written through their duly authorized representatives:

LANDLORD:

Jeff Phinney 37018 Main
Street Burney, California
96013

By: Jeff Phinney

TENANT:                          5Q3 Not 4 Profit

Medicine Man Collective, LLC         Non Applicable Individual
~~Martin Clark, Individually~~           for this lease
Chris Staffin, Individually

Address:      37016 Main Street Burney,
California 96013

By: Chris Staffin

21                                   Tenant Initial

EXHIBIT A

## Option to Renew

A.    Tenant at its option may renew the term of this Lease for up to two (2) additional periods of six (6) months each (the "Renewal Term") by serving written notice thereof upon Landlord (the "Renewal Notice") at least two (2) months before the expiration of the initial Lease Term, or any extension period thereafter. Upon the service of such Renewal Notice and subject to the conditions set forth in the preceding sentence and section B below, this Lease shall be renewed for the applicable Renewal Term. The Renewal Terms shall commence upon the expiration date of the initial Lease Term for the Renewal Term. The renewal shall be upon the same terms, covenants, and conditions as provided in this Lease for the initial Lease Term, except that the Basic Rent payable during the Renewal Term shall be at the Market Rental Rate (as defined below) for a lease that would commence on the commencement date of the Renewal Term.

B.    Landlord and Tenant agree to negotiate in good faith the basic rental rate that shall apply to the Renewal Term, which negotiations shall not exceed thirty (30) days from the date of the Renewal Notice. If Landlord and Tenant are unable to agree to the basic rental rate applicable to the Renewal Term, then the basic rent shall be the Market Rental Rate (as hereinafter defined)

C.    The term "Market Rental Rate" shall be determined as follows: Landlord and Tenant shall each promptly appoint one (1) appraiser with experience in appraising similar class office buildings in the area of Burney, California. Both appraisers shall promptly appoint a third (3rd) appraiser. Each appraiser hereunder shall be a member of the American Institute of Real Estate Appraisers (or successor organization) having at least five (5) years experience in commercial real estate in the Burney, California area. If such appraisers fail to appoint such third (3rd) appraiser within ten (10) business days after notice of their appointment, then either Landlord or Tenant, upon notice to the other, may request appointment of a third (3rd) appraiser by the then president of the Board of Realtors for Burney, California, or any then similar existing body. Each appraiser shall independently make an appraisal of the Market Rental Rate. The Market Rental Rate shall include factors such as concessions for free rent, real estate commissions, tenant improvement allowances and any other concessions which might otherwise affect the transaction. The Options shall be personal to Tenant and may not be assigned to any assignee or subtenant. If the determination of one appraiser is disparate from the median of all three determinations by more than twice the amount by which the other determination is disparate from the median, then the determination of such appraiser shall be excluded, the remaining two determinations shall be averaged and such average shall be binding and conclusive on Landlord and Tenant; otherwise the Market Rental Rate shall be the average of the three appraisals. If, after notice by either Landlord or Tenant of the appointment of an appraiser by the party giving such notice, the other party to

22

Tenant Initial [    ]

whom such notice is given shall fail, within a period of ten (10) days after such notice, to appoint an appraiser, then the appraiser so appointed by the party giving the notice shall have the power to proceed as sole appraiser to determine the Market Rental Rate. Landlord shall pay the fees and expenses of the person appointed by Landlord, and Tenant shall pay the fees and expenses of the person appointed by Tenant as appraiser hereunder. Landlord and Tenant shall each pay one-half (1/2) of the fees and expenses of the third (3rd) appraiser appointed pursuant to the provisions of this exhibit.

D.      Any termination of this Lease during the initial Lease Term shall terminate all rights of renewal hereunder. Any assignment or subletting by Tenant pursuant to section 11 of this Lease shall terminate the option of Tenant contained herein.

23

Tenant Initial 

CALIFORNIA STATE BOARD OF EQUALIZATION

## SELLER'S PERMIT



ACCOUNT NUMBER

11/1/2010   SR   KHK 101-679719

MEDICINE MAN COLLECTVE SPRTL CTR
37016 STATE HIGHWAY 299 E
BURNEY, CA 96013-4724

NOTICE TO PERMITTEE

For general tax questions, please call our Information Center at 800-400-7115.
For information on your rights, contact the Taxpayers' Rights Advocate Office at 888-324-2798 or 916-324-2798.

### A MESSAGE TO OUR NEW PERMIT HOLDER

As a seller, you have rights and responsibilities under the Sales and Use Tax Laws. In order to assist you in your endeavor and to better understand the law, we offer the following sources of help:

Please post this permit at the address for which it was issued and at a location visible to your customers.

STATE BOARD OF EQUALIZATION

Sales and Use Tax Department

Exhibit D

# Medicine Man Dispensary

37016 Main Street Burney, CA  96013

## *Membership Standards*

Members are expected to **behave in a courteous and respectful manner** to both neighbors and fellow patients exemplifying the high standards of the Collective. Dangerous or violent behavior, willful violation of the rules or engagement in dishonest activities will not be tolerated. Loitering without purpose or becoming a nuisance through annoying or disorderly conduct is also unacceptable.

Patients are **considered members only as long as he or she is in good standing** and possess validated and current credentials. Members certify that no condition of bail, probation, or parole prohibits their use or possession of medical cannabis. **Membership may be revoked at any time** should the patient fail to uphold the collective's *Patient Criteria* or *Membership Standards*.

Members should review and must **act in accordance** with State and Local Health and Safety Codes, Prop 215, SB 420 and CA Attorney General's Guidelines. We recommend that all members consult with a lawyer if unsure as to how these and other laws apply.

State Law **does not permit qualified patients to smoke** medical cannabis in any place where smoking is prohibited by law, in or within 1000 feet of the grounds of a school, recreation center, or youth center, (unless the medical use occurs within a residence), on a school bus, while in a motor vehicle that is being operated or while operating a boat.

**Only members are allowed** in the dispensary facility. Medical cannabis may not be consumed in or around the grounds or parking areas. Members should avoid the use of cannabis in public, at work, around children, on federal property or outside of the State.

**No alcohol, illegal drugs, weapons or pets** with the exception of service animals are allowed on the premises at any time. Cameras, cell phones, pagers and other recording devices are likewise prohibited.

Members acknowledge that contributions for products or services provided by the collective whether in currency or in kind **are to support and defray the costs and operating expenses** of the collective and in no way constitute commercial promotion.

Members are expected to **carry their credentials on their person** for presentation to law enforcement any time cannabis is present. Be sure to remove all medications from sight before leaving the dispensary for your own safety.

Exhibit E

# Medicine Man Dispensary

37016 Main Street Burney, CA  96013

## *Purpose & Patient Criteria*

*Purpose:*

We are a membership based collective, organized in accordance with state law to promote and facilitate the collaborative association of patients engaged in the **legal medical cultivation, dispensation and use of cannabis** and other restorative plants.

Our objective is to expeditiously **provide curative medicine** of the highest quality with compassion and professionalism.

Our membership process includes verifying the patient's identity and credentials in confidence and obtaining their informed consent to affiliate and **adhere to the collective's criteria and standards** in strict observance of state and local Health and Safety Codes.

The Collective retains the legal right to determine who can join and **may revoke membership if necessary** at any time to insure the legitimacy, safety and security of patients and neighbors alike. We do not discriminate against people on the basis of gender, ethnicity, country of origin, sexual orientation or other illegal basis.

We endeavor to function in a non-offensive businesslike manner in an effort to mutually **advance the health and prosperity** of our community and patient membership.

*Patient Criteria:*

Patients must demonstrate that he or she is at least **18 years old and is a California resident** by providing a valid DMV issued driver's license or ID card.

Patients must possess a verifiable **written recommendation** for medical cannabis use from a California physician who is currently licensed to practice medicine or a Department of Health issued **Medical Cannabis ID Card**. No non-original documentation accepted.

Patients must **agree to uphold the collective's** *Membership Standards* and complete *Membership Registration* in order to receive dispensation.

Patients requiring a **Caregiver** to receive medicine must be members and have the Caregiver register and jointly **complete a** *Designation of Primary Caregiver* form.

# Medicine Man Collective
### 37016 Main Street Burney, CA 96013

## Patient Registration

I authorize the collective to **contact my recommending** physician to verify his or her Recommendation or approval for my use medical cannabis.

I **designate the collective** to cultivate, secure and dispense medical Cannabis on my behalf.

I will **observe local limits** on possession, cultivation and transport Of medical cannabis and will not under any circumstances divert Medication to non-patients or illicit markets.

I **certify under penalty of perjury** that the information provided is true and accurate, and am not seeking registration for any fraudulent purpose.

Patient Name :  ██████████████          Lic or ID:  ████████████
Phone:  ██████████████          DOB  ████████
Address:  ██████████████
██████████████          ████████

How did you hear of us?   *CITC  POSTER / Rays FRM*

Signature:  ✗ ██████████████

*Exhibit F*

*script 4/16/11*

Medicine Man Collective

Cultivation Contract/ Garden Plot Lease Agreement

**In conjunction with Cannabis Industries Training Center/ CITC Grower Education Training Program from here on addressed as**

## HOME GROWN GARDENER PROGRAM

The intent of this document is to primarily secure the corporation, collective and individual participan in communications and conduct as to the 48 vegetative or 24 mature female plant medical cannabis garden located at: **29373 Day Road McArthur, California 95056**

The property at this address is owned by: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Man **Collective Patient 350/ 215 Dr. Speller 12-16-10 thru 12-16-11, and** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓ ▓▓▓▓▓▓ **Patient 444/ 215 Dr. Gitter 4-16-11 thru 4-16-12** .

The grow operation will be conducted by: **First Officer Christopher Staffin CDL# N9522321/ 215 Dr. Gitter 6-10-11 thru 6-10-12.**

The 4 participants and 215 medical recommendation holders (patients), collective and or cooperative individuals are:

**Patient 145:** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ **10 thru 8-4-11**

**Patient 146:** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ **thru 7-30-11**

**Patient 267:** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ **thru 2-18-12**

**Patient 152:** ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ **4-13- 11 thru 4-13-12**

List responsibility parameters expected of each individual named above.

**Non applicable.  Three of four listed patients above are for security NON OVERLAP grow considerations and all four doctor recommendations are correlated with cooperative grow parameter considerations, these participants are in service of the collective only and patients are not receiving any further considerations and or product.**

The time duration parameters of phase one of this three season 3 program (one phase each season) initial contract and potential extended contract is: **May 1, 2011 –November 30, 2011.**

Primary production target:

**Not to exceed 6 US pounds of AAA grade medical cannabis flower processed, cured and packaged** at an agreed initial value considering normal harvest parameters ( fall harvest, common practice and timing related to harvest and " fair " market value ) $1000.00 estimated value each pound, if up to 4 US pounds is purchased back by the corporation. If harvest is

Exhibit G

complished under a " BLACK BOX " parameter, the accompanying value of product in this context will increase to $1500.00 per US pound. Cash value based on hand process trimmers and or trim machine with hand finish and labor payments thereof consisting of up to 3 different strain varieties at 2 US pounds each strain to be awarded to the property owners and cooperative grow partners, the same two individuals for payment for lease of garden plot described as above for phase one, season one.

All remaining product, by product and or trash is to be removed from real property address and is considered the exclusive overage tangible goods property of Medicine Man Collective Corporation.

Allocation of product parameters:

Not to exceed the 6 US pounds of finished product packaged and prepared for storage will not leave the property and will have been processed fully and allocated to the property owners within 30 days of harvest or the equivalent in product and or cash per their request with the exception of cash will not be paid until " sale " of product by Medicine Man Collective Corporation facilitators on the up to 4 pounds potential overage to be sold by property owner(s)/ patient(s) prospectively per successful harvest and exclusively to this corporation (successful harvest considered 6 US pounds plus per this garden). Any product considered to be sold back to this corporation will remain in secured possession of the property owner(s)/ patient(s) until paid cash.

Cash is paid to patient(s) considered non professional (no state sales tax ID document required) for product considered overage (overage defined as more medicine than they need for the year or at that time, goes to legal possession parameter per recommendation per individual patient/ SB420 indicators, 3 US pounds per patient per year unless specified different by recommending physician).

Processing, securing and allocating product to property owners and participants as a primary and priority of this contract is considered a BONUS structure of the contract.

All product as stated above, over and beyond 6 US pounds of AAA Grade Medical Product is the exclusive property of Medicine Man Collective Corporation and will be done with as the corporation sees fit within the parameters of 215 law.

Primary Corporate responsibilities to be performed by Officer(s):

First Officer Christopher Staffin will ensure engagement of tools, labors and expertise to complete project including supplying soil, genetics, seeds and/or plants, amendments, fertilizers, fencing, lattice, canopy security structure, shade netting including costs of equipment purchases and or rentals. All materials utilized onsite and considered "permanent" fixtures of the outside/ covered garden site are donated to the property owners. This includes soil, amendments, lattice, shade nets, greenhouse, black box and associated equipment. Indoor early start equipment is NOT CONSIDERED in these parameters and remains property of Medicine Man Collective Corporation.

sponsibilities of participant(s):

Property owner participant Debra White Chalmers is formally enrolled in CITC/ Cannabis Industries Training Center "Home Grown Gardener Program" and is expected to follow direction, read, engage and learn how to grow cannabis outdoors for self supportive purposes as well as potential collective grow services in the future phases of this contract should Phase 2 and or 3 be engaged.

Property owner participant Daniel Chalmers is expected to assist with manual labors and moral support of operation. All other participation on his part considering education and applications with growing specific is considered a bonus for all mentioned considerations.

Other benefits:

This program is a coordinated effort between Cannabis Industries Training Center, Medicine Man Collective and all participants and is considered a "PILOT" and platform for development of individuals participating presently and in the future.

The training implemented is also considered a BONUS of this contract as it therefore relieves student participants of performance pressures correlated with future potential PHASES and or PRODUCTION for target as well as costs of enrollment, participation and material benefits.

Signature of Officer(s):

Date: 6/4/11

Signature of Participant(s):

Date:
06/04/2011



### County of Shasta - State of California
### CLAIM FORM

Return this form to:
**Shasta County Risk Management**
1450 Court Street, Room 348, Redding, CA 96001-1676
(Claims filed pursuant to the Tort Claims Act, or amendments to such claims are forwarded
to the Clerk of the Board for the Clerk's public access file.)

**1.   Claimant Information**

a.  Name: (Last) *Steffin*      (First) *Christopher*   (Middle Initial) *D.*
b.  Home Address: (Street)  *N/A*   *16673 Powerline Road*
    (City) *Redding*   (State) *Ca.*   (Zip) *96001*
    Home Telephone ( *530* ) *276-5460*
c.  Mailing Address (if different than above) *Box 591   Shasta, Ca. 96087*
d.  Date of Birth *4  22  1963*
    Month   Day   Year (Ex: 01/01/1981)

**2.   Claim Details**

a.  Date of Incident *Nov. 2009 through Present.*
b.  Time: (Hour: Minutes)      :      AM/PM (Circle One)
c.  Date you first became aware of incident *Nov. 2009 April 2010*
d.  Please describe fully how loss/damage occurred (attach additional pages if necessary)
    *See Attached.*
    _____
    _____
    _____
e.  Have you made a claim with anyone else? Y/N
    i.   Details_____
f.  Has anyone made a claim on you? Y/N
    i.   Details *See Attached*

**3.   General Information**

a.  Name, address and telephone number of witnesses: *To be provided.*
    _____
b.  Did police respond? Y/N?
    i.   Details_____
    ii.  Police report number_____ (Provide copy if available)
c.  Do you feel any other party has contributed to the cause of claimed damages: *See Att. 1*

**Exhibit H**

d. Please describe fully ___ any loss/damage occurred (attach additional ___ if necessary)

_____

_____

_____

e. Have you made a claim with anyone else? Y/*N*
   i. Details_____

f. Has anyone made a claim on you *Y*/N
   i. Details *See Attached*

---

**3. General Information**

a. Name, address and telephone number of witnesses: *To be provided.*

_____

b. Did police respond? *Y/N?*
   i. Details_____
   ii. Police report number_____ (Provide copy if available)

c. Do you feel any other party has contributed to the cause of claimed damages: *See Attached.*
   i. Name *Individual office holders/offices described.*
   ii. Address_____
   iii. Explain why:_____

d. Have you ever been involved in a similar incident with similar circumstances? *Y/N*

e. Explain why you feel Shasta County is responsible for claimed damages: *See Attached.*

_____

f. Are you aware of any defect in your equipment or property that gave rise to this incident? Y/*N*
   i. Details_____

_____

_____

Form SCRMS-88 (rev.08-08)

**4.    Injured Person Details**

a.    Was anyone injured? Y/N    *Punitive. Monetary.*
b.    Name of injured party(s).    (LAST)    (FIRST)    (M.I.)
    i.    Address  *Medicine Way Collective Spiritual Center 501(C)(4) Calif. Mutual Benefits Corporation*
c.    Full details of injury.  *See Attached.*

d.    Was the injured party seen by a physician? Y/N
    i.    Name of the physician?  (LAST)  *To be provided.*  (FIRST)    (M.I.)
    ii.    Address _____  (M.I.)
e.    Amount claimed for injury.  (Please attach billing documentation).

**5.    Property Damage Details**

a.    Name of the owners of the damaged property.  (LAST) *Medicine Way* (FIRST) *Collective Spiritual Cent.*
    i.    Address _____
    ii.    Physical location  *See Attached.*
    iii.    Telephone _____
b.    Full details of damage to property  *To be provided.*
c.    Have any repairs been carried out? Y/N
    i.    If yes, give details _____
    ii.    Name of Repairer _____
    iii.    Address and phone # _____
d.    Amount claimed for property damage _____
    (Please provide bills or two (2) estimates).

**6.    Automobile Damage Details**

a.    Automobile Registered Owner (LAST)    (FIRST)    (M.I.)
    i.    Address _____
    ii.    Lien Holder? Y/N____ If yes, NAME: _____
        Address _____
        Telephone _____
b.    Year/Make of Auto _____
    i.    Model _____
    ii.    License # _____
    iii.    VIN# _____
c.    Drivers Name (LAST)    (FIRST)    (M.I.)
    i.    Driver's Operator's License # _____
d.    Address where auto is located _____
e.    Name and address of your insurance company. _____
f.    Amount claimed for auto damage (please provide bills or two (2) estimates). _____

e.   Amount claimed for Injury. (Please attach billing documentation).

---

**5.   Property Damage Details**

a.   Name of the owners of the damaged property. *Medicine Moon Collective Spiritual Cente*
  i.   Address _____
  ii.   Physical location *See Attached.*
  iii.   Telephone _____
b.   Full details of damage to property *To be Provided.*
c.   Have any repairs been carried out? Y/(N)
  i.   If yes, give details _____
  ii.   Name of Repairer _____
  iii.   Address and phone # _____
d.   Amount claimed for property damage _____
     (Please provide bills or two (2) estimates).

---

**6.   Automobile Damage Details**

a.   Automobile Registered Owner (LAST) _____ (FIRST) _____ (M.I.)
  i.   Address _____
  ii.   Lien Holder? Y/N ___ If yes, NAME: _____
       Address _____
       Telephone _____
b.   Year/Make of Auto _____
  i.   Model _____
  ii.   License # _____
  iii.   VIN# _____
c.   Drivers Name (LAST) _____ (FIRST) _____ (M.I.)
  i.   Driver's Operator's License # _____
d.   Address where auto is located _____
e.   Name and address of your insurance company. _____
f.   Amount claimed for auto damage (please provide bills or two (2) estimates). _____

---

**7.   Declaration**

Criminal Penalty for presenting fraudulent claims or making false statements.
     Every person who, with intent to defraud, presents for allowance or payment any false or fraudulent claim against the County is guilty of a felony. (See California Penal Code 72).

     I declare under the penalties of perjury that the amount of this claim covers only damages and injuries caused by incident above described.

*[signature]* CEO                                    6/11/2012

Signature of Claimant                                Date

Form SCRMS-88 (rev.08-08)

(b)      The post office address to which the person presenting the claim desires notices to be sent.

(c)      The date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted.

(d)      A general description of the indebtedness, obligation, injury, damage or loss incurred so far as it may be known at the time of presentation of the claim.

(e)      The name or names of the public employee or employees causing the injury, damage, or loss, if known.

(f)      The amount claimed if it total less than ten thousand dollars ($10,000) as of the date of presentation of the claim, including the estimated amount of any prospective injury, damage, or loss, insofar as it may be known at the time of the presentation of the claim, together with the basis of computation of the amount claimed.  If the amount claimed exceeds ten thousand dollars ($10,000), no dollar amounts shall be included in the claim.  However, it shall indicate whether the claim would be a limited civil case.

## §911.2.  Time of or presentation of claims

A claim relating to a cause of action for death or for injury to person or to personal property or growing crops shall be presented as provided in Article 2 (commencing with Section 915) of this chapter not later than six months after the accrual of the cause of action.  A claim relating to any other cause of action shall be presented as provided in Article 2 (commencing with Section 915) of this chapter not later than one year after the accrual of the cause of action.

Form SCRMS-88 (rev.03-08)

## INSTRUCTIONS TO CLAIMANTS

In order that your claim for damages may receive prompt and proper consideration, you must provide the information required on the front on this form. All material facts should be stated on this form as it will be the basis of further action upon your claim. Be sure to carefully read the instructions set forth below. Failure to provide complete information may result in your claim being returned as incomplete. Following completion of the form, mail or deliver it in person to Shasta County Risk Management, 1450 Court Street, Room 348 Redding, CA  96001.

For regulations regarding the proper and timely filing of your claim, see Sections 910 and 911.2 of the California Government Code (printed below). In most cases, you cannot file a lawsuit against the County or its employees unless you have previously filed a claim in a timely manner.

Claims for damage to, loss of, or destruction of property or for personal injury must be signed by the owner of such damaged, lost, or destroyed property or by the injured party or a duly authorized agent or legal representative. Claims signed by agents or legal representatives must be accompanied by evidence establishing authority to act as agent of injured party and/or owner of damaged property.

The amount claimed should be substantiated by competent evidence as follows:

(a)     In support of a claim for personal injury or death, the claimant should submit a written report by the attending physician showing the nature and extent of injury, the nature and extent of treatment, the degree of permanent disability (if any), the prognosis, and the period of hospitalization or incapacitation. Itemized bills for medical, hospital, or burial expenses actually incurred should be attached.

(b)     In support of claims for damage to property which has been or can be economically repaired, the claimant should submit at least two itemized, signed statements or estimates by reliable, disinterested concerns. If payment has been made, the itemized, signed receipts evidencing payment should be submitted.

(c)     In support of claims for damage to property which is not economically repairable, or if the property is lost or destroyed, the claimant should submit statements as to the original cost of the property, date of purchase, and value of the property, both before and after the accident. Such statements should be by disinterested, competent persons, preferably reputable dealers or officials familiar with the type of property damaged or by two or more competitive bidders; the statements should be certified as being just and correct.

Jonathan P. Hill
Human Resources Analyst

---

The following is taken from Title 1, *Government Code*:

§ 910.   Contents of claim

A claim shall be presented by the claimant or by a person acting on his or her behalf and shall show all of the following:

(a)     The name and post office address of the claimant.

(b)     The post office address to which the person presenting the claim desires notices to be sent.

(c)     The date, place and other circumstances of the occurrence or transaction which gave rise to the claim asserted.

(d)     A general description of the indebtedness, obligation, injury, damage or loss incurred so far as it may be known at the time of presentation of the claim.

(e)     The name or names of the public employee or employees causing the injury, damage, or loss, if known.

(f)     The amount claimed if it total less than ten thousand dollars ($10,000) as of the date of presentation of the claim, including the estimated amount of any prospective injury, damage, or loss, insofar as it may be known at the time of the presentation of the claim, together with the basis of computation of the amount claimed. If the amount claimed exceeds ten thousand dollars ($10,000), no dollar amounts shall be included in the claim. However, it shall indicate whether the claim would be a limited civil case.

§911.2.  Time of or presentation of claims

A claim relating to a cause of action for death or for injury to person or to personal property or growing crops shall be presented as provided in Article 2 (commencing with Section 915) of this chapter not later than six months after the accrual of the

Demand Letter

6/6/2012

To: Shasta County Risk Management/ 1450 Court Street, Room 348/ Redding, CA 96001-1676

From: Medicine Man Collective Spiritual Center Corporation/ Box: 591/ Shasta, California 96087

Considering the outline of the Incident/ Harassment Report we have included with this complaint the corporation by the above title demands restitution to the damages incurred by overzealous local politicians bent on private agenda in conflict with their sworn office(s).

This Complaint is formally designed to cover individuals within as well as departments and offices they represent and to hold accountable to the overview and outline of any and all actions including but not limited to; CONSPIRACY to dis-implementation and or dismantlement of state law and entities sanctioned by state authority and operating within its context, ongoing HARRASSMENT and or MALFEASANCE, negligence, misrepresentation, fraud, coercion, conspiracy, theft, malicious prosecution, dereliction of duty.

There are no isolated incidents of these behaviors. It has been an ongoing theme in Shasta and its municipalities for almost 17 years since the inception of the COMPASSIONATE USE ACT of 1996.

We as corporate officers and representatives of all patients residing in Shasta and their Safe Access to cannabis medications and cultivation rights demand a negotiation meeting with Board of Supervisors, Planning Division Supervisor(s), Sheriff and Under- Sheriff, District Attorney and Deputy Attorney(s), Attorney for the County of Shasta and or their qualified representatives to insure expedient rectification of Shasta County Ordinance(s) to align with state law immediately.

We demand that all proceedings, processes and plans are open door to the public and media and that local as well as state canna-business specialists be consulted and science adhered to within the framework of state law for the health and betterment of patients' and citizen's wellbeing and social conditions in Shasta County.

We demand that AFFIRMATIVE DEFENSE on medical cannabis case prosecution end immediately in Shasta County and its municipalities; Redding, Anderson and Shasta Lake City.

In the United State of America an individual is innocent until proven guilty. Affirmative Defense federal think tank drug policy is unacceptable behavior by our elected officials in Shasta; and California, and its days are numbered.

Board of Directors

Medicine Man Collective Spiritual Center Corporation

Medicine Man Dispensary

Incident/ Harassment Report

Prior to incident number one we had gone to the Planning Division for Shasta County and inquired about their permitting process. We were told to wait while the female attendant talked to a supervisor based on the dispensary being the business. Attorney for Medicine Man Collective Spiritual Center Corporation at that time Keith Cope had informed us we did not need a "special use permit" but Mr. Staffin instinctually went to inquire anyway. The attendant returned with a list of provisions we'd necessitate including $3672.18 plus fee, hold the site for six months. We called a day later and specifically asked and were told the fee was non-refundable. We could tell by the words said and the body language of the individual that this special use permit category is being utilized to eliminate unwanted businesses. We considered it disingenuous that we were not informed of this fact on the upfront. They were not even nice about it. It seemed wholly unfair and non democratic to be " catch 22'd " into a category of use permitting where no entity mentioned in this category has EVER been issued a special use permit. State law prohibits "Banning "and cease and desist is as close to a "BAN" as it gets in the cloak of temporary or not.

1. November 2009; Brett Hail, Shasta County Code Enforcement appears physically at 37016 Main Street Burney and informs us that we will need to cease and desist. In the verbal altercation where he demanded access to view the interior, "We've been successful running out motorcycle gangs in this County with the red tape tactics that you mention..." he stated to Staffin with Martin Clark as a witness.

2. December 3,2012; Citation/ Staffin/ ( No Special Use Permit, public nuisance) by Code Enforcement officer Jerry Bellinger along with his analogy of how the boys upstairs are not going to change their tune and we need to stop and apply for  permit/ six month waiting period, $3672.18 plus non refundable. Bellinger was accompanied by a Sheriff's detective whom questioned Staffin for 45 minutes and four other deputies that just stood around, the detective and Bellinger in the end read Mr. Staffin the riot act and attempted to intimidate Staffin into shutting down. The landlord is cited simultaneously as in "aiding and abetting".

3. The Sheriff's began to park 2-3 deep in SUV's on the bridge, across the street, down the street and across the street in the alley and just watch us until Staffin would break out the camera and point it at them... then they would disperse. Several photographs were taken of Sheriff's SUV vehicles 2-3 together watching the store front. This became a common theme in the first six months, not on a daily basis but definitely weekly. Next six months not so common but still occurred on occasion. The business owner across the street witnessed and has acknowledged the harassment incidents on many occasions, Pot Luck Trading Post.

4. April, 2010 we received citation number two, identical to citation number one. Bellinger was more polite and congenial but emphasized that the Man Upstairs sent him and you will have to close... apply for the permit etc...Two Sheriff's escorted him then. Staffin and the landlord are cited, threatened and told to give us the boot again.

5. Sheriff increased surveillance again for several months.

6. Sheriff's refuse to respond to theft, harassment and or an assault incident. They'd listen on the phone and or show in person and listen, but then state it was a civil matter to be referred to court in Redding. The physical assault incident was noted in a hand held pad by Sgt St Claire and he asked if Staffin wished to press charges on the individual and he stated yes in front of Ali Boone Corp Assistant. No charges were ever filed to our knowledge. The individual remained at large and perpetrated more crimes as we were told by members of the community.

7. We went to court repeatedly on citation #1 and #2.  Ultimately after Judge Damon pro tem from Sonoma dismissed one count citation #1 No Special Use Permit and public nuisance and Citation #2 public nuisance and found us guilty of one count No Special Use Permit.

8. The Shasta County Attorney Rubin Cruise, Jr. sues Staffin as an individual in direct contradiction to Ca state law 425.14 governing non profit entities for trial cost on a frivolous law suit. Award $4000.00. He proceeds to send Staffin an unsigned Judgement and the crafty wording of his letter allows Staffin to consider the Judgement has not been rendered nor entered yet and therefore a signed copy will be forthcoming. The Appeal window is lost due to Staffin being subtly duped.

   Medicine Man Collective Spiritual Center / Incident/ Harrassment Report continues....

9. November 4, 2010; we received citation number 3 the day after Proposition 19 (legalize marijuana initiative) failed. Identical to first two citations. Only Deputy Estes accompanies Bellinger this time. The landlord was not served a citation this round. The message is clear, we are "marijuana people " the same as Dixon's Herbs and the raid and prosecution, statements made by Leonard Moty as Police Chief in Redding, " What they are doing is no different than dealing drugs out of the back of a car in an alley around the corner" on front page of local media.

10. John Coonradt and Staffin attempt to see Russ Mull, Director of the Planning Division. We are referred to Assistant Director Rick Simon whom was non- responsive and scoffed at Staffin while he spoke to him at one point. The only question he did answer was to the effect that"...there has never been a special use permit applied for in the County of Shasta." We requested someone contact us within 5 business days for an appointment with Mr. Mull and were never entertained. Apparently special use permits in Shasta are prohibitive and designed so to "quash" attempts at establishment by "undesirables".

11. December, 2010; Landlord refuses to take lease payment claiming we are an illegal business. We have statements from his now former business partner in a different business, step forward and admit that they were with him at the Shasta County Planning Division, when he inquired "How do I get them out of there?"... Based on the last citation which he was immediately made aware of by Mr. Staffin. The contractual business relationship between the corporation and the landlord was therefore undermined by county personnel and their actions.

12. December, 2010; Warrant issued for 37014 Main Street (landlord's apartment) served on Medicine Man Collective 37016 Main Street taped to the door by Bellinger. Ali Boone is volunteer attendant and witnesses this engagement.

13. December, 2010; Bellinger video tapes a Sheriff Sgt and four Deputies verbal berate Staffin and demand entry by the Warrant from the week prior to gather evidence of " the indoor nursery " and any other illegal activity. When told that the warrant did not cover nor mention this

business nor this address and the physical description and address was next door they arrested Staffin for obstruction and entered and video -taped the interior of 37016 Main Street. Staffin was taken to Burney substation, booked and released a short time later.

14. January 11, 2011 at 11am John Coonradt and Staffin meet with Stephen Carlton, DA and express our concerns. He listens and is otherwise non responsive.

15. Medicine Man Collective Board of Directors begins writing letters to Shasta County Grand Jury asking that they look into special use permitting in Shasta and ongoing harassment by its departments and personnel.

16. April 2011; Landlord sues/ unlawful detainer for non rent payment and again states in Burney Court that we are an" illegal business" and we are evicted. Looks like the tactic of citing Staffin and not Jeffrey Phinney the landlord worked.

17. May 2011; Deputy Estes serves Court Order to Vacate and acknowledges that "everyone" knows we intend to DELIVER when queried by Staffin.

18. July 2011: Sheriff refuses to respond to harassment call from Staffin at Shell Station in Burney (Intermountain News Sheriff's call logs) for harassment by a Cal Trans worker while parked there minding his business delivering to patients.

19. July, August, September, 2011; Sheriff's do not return calls from Day Road made by Staffin on Debbie White Chalmers behalf. Her soon to be ex husband and abuser has not turned in 17 plus guns and is making contact with her repeatedly further disrupting a corporate project under contract at that location.

20. Sheriff stalks Staffin on Day Road with multiple visits in the guise of domestic issues between Debbie and her estranged husband.

21. October, 2011; Sheriff's Deputies attempt to engage Staffin in a "Bush Whacking" attempt between Midnight and 1 a.m. where they anticipated Staffin would be fulfilling his contract. Staffin was informed by the elderly neighbor with an ill husband, the lights and noise awoke her to the commotion and she was going to call the Sheriff when she realized it was the Sheriff. Dispatch logs notate officers sent to Big Lake Road that night during that timeframe.

22. October 17, 2011; Sheriff's Deputy #172 contrives and fabricates a warrant eight days prior denying Medicine Man Collective's existence and five Sheriff's Deputies serve it with guns drawn raid style on Day Road. They inquire," Where is Staffin. Where is the product?" Deborah White Chalmers is the only one present on HER PROPERTY at that time.

23. October 17, 2011; Staffin arrested at gun point while driving corporate vehicle on corporate business and $149,820.00 in retail product is confiscated illegally and without cause while it is in the curing process/ 33 US lbs/ Degenerated. Patients denied medication. Staffin booked and released with no charges on product by Sheriff.

24. October 19, 2011; Medicine Man Collective Board of Directors sends letter to Rubin Cruise/ cc: DA, BoS/ stating that we have established contractual business parameters that will be damaged or destroyed should they choose NOT to consider before voting to discriminate against medically documented sick and infirm patients. Should they choose to ignore this fact we would necessitate legal action(s).

25. Retail operation SHUT DOWN and State Board of Equalization notified for corporate sustainability. Existence and operations in Shasta has been destroyed.

26. October, 2011; DA files charges on Staffin including Conspiracy, Possession for Sale, Transportation of Narcotics, weapons.

27. March, 2012; DA violates Bradey Act during Preliminary Hearings.

28. The Private Investigator for the Corporation Rodney Jones informs DA Investigators and Sheriff's Internal Affairs of his findings and multiple flaws with conduct and evidence in Staffin's case and receives no communications back after several attempts.

29. DA, BoS, County Attorney and Sheriff all refuse to honor subpoenas for materials, reports and communications within the scope of Staffin's trial. County Attorney Rubin Cruise writes a letter to Corporate Attorney John Fuery Esq. and explains Staffin's behavior and subpoena is incorrect. The California Department of Justice honored this same subpoena form and process. It appears that we are being duped and stone walled in contradiction to justice. It is believed that the County Attorney and the Sheriff's Department have engaged the District Attorney and the Court in an information control conspiracy to deny Mr. Staffin truth and justice.

30. April, 2012; Judge Ruggerio denies all motions and grossly misstates material fact in the record.

31. Judge Curle contacted by Rodney Jones through letter explaining his role as Justice signing a warrant with uncorroborated and contrived statements by Deputy #172 in the affidavit therefore. The Attorney General of the State of California is sent all pertinent materials in this matter.

32. May, 2012; Article/ Redding/ Record Searchlight/ "Secret Justice ".

33. The ADA is formally made aware of DISCOVERY as it is entered into record by Judge Anderson along with the Department of Justice records under subpoena which shows Staffin has committed no crime and the affidavit has major problems.

34. May, 2012; 1204.3 viewed as DEFACTO UNCOSTITUTIONAL by Defense Atty.

35. Rodney Jones receives a letter from the Secretary to Judge Curle and the letter states the original correspondence and reply will be placed in Staffin's criminal proceedings file.

36. June, 2012; Eight months later there is still no resolution to these matters. The Public Defender has done not one thing we have requested and although he has stated repeatedly he would do this and that. He has related that the ADA has been suggesting dismissal of the narcotics charges for almost five months with no action on the part of the DA's office. There has never been any evidence to any crime oriented or in relation to the medicinal cannabis and yet Mr. Staffin has been charged with Conspiracy, Possession for Sale and Transportation of Narcotics. The DA and the Sheriff for Shasta County do not distinguish between MEDICINAL CANNABIS and vice marijuana. Further it appears that they PROSECUTE MEDICINAL CANNABIS ALONG WITH VICE MARIJUANA for federal funding purposes.

37. June 11, 2012; Settlement Conference.

38. June 11, 2012; File Complaint and Demand w/ Shasta County/ Notify Media of ALL OF THE ABOVE.

In our view, it was foreseen over two and a half years ago by the Members of the Board and Mr. Staffin the now fully exposed culmination of prejudice and malfeasance on the part of Shasta County and its departments mentioned above. Shasta County Board of Supervisors outlawed all canna-business activity, illegally, as well as crushed patient's rights by restricting land use in relation to growing medicine and other constitutional rights while violating state law. If you all

wish to receive Federal paychecks, perhaps you should have applied for and sworn to uphold Federal appointed office(s). This is unequivocally California, the State of... and Shasta is NOT an island unto itself within this context. Every attorney we have corresponded to and communicated with has related it as so. Current and acknowledged state law sets this precedent. Consider yourselves informed.

End Report.

Monetary Damage Report
Medicine Man Collective Spiritual Center/
Cannabis Industries Training Center/
"Home Grown Gardener Program"/
3 year investment, relationship expansion overview
2011 Day Road McArthur, California/
Model
Compounded Production Report

Year One/ One Unit Operation

24 medical grade genetic female cannabis plant cooperative grow per site

Year One yeild: 55 pounds finished mature flower product @ $4540.00 retail per US Pound=$249,700.00          $249,700.00

Year two will expect 2x production per organic consultant program and documented results=$499,400.00          $499,400.00

Year 3 compounded by additional 12 operations($249,700.00x13)=$6,492,200.00+$249,700.00=$6,741,900.00          6,492,200.00

Year 3 x 2011 grow operation($249,700.00x3)=$749,100.00          $749,100.00

Year 2/ 20:13 growo  perations($249,700.00x12x2)=          $6,492,200.00

Year 1     2013 grow operations( add 12 more/ $249,700.00x12)=$6,492,200.00          $12,984,400.00

Total Retail potential of grow operations through 2013 ONLY,+++          $6,492,200.00
                                                                        $26,717,900.00

Indoor Grow Operation 37016 Main Street Burney 96013
January 2011 through 2013/ 4 cycles per year @ 24 US Pounds per cycle @$6810.00 retail
($6,810x24x4x3)=$1,961,280.00          $1,961,280.00

20% of gross goes to n retail/ refer to business plan  per 5 dispensaries          $28,679,180.00

Remaining product divided by two per state average wholesale          $5,735,836.00

All payroll opportunities/ board of director payments/ interest/ taxes/ operations costs are considered covered          $11,471,672.00

within the context of these numbers as " grow production/inhouse "is baseline for flow of all numbers

Total loss per operations/ production through 2013 based on initial 4 year business plan targets          $17,207,508.00



# Shasta County

## SUPPORT SERVICES – HUMAN RESOURCES
## RISK MANAGEMENT

1450 Court Street, Ste. 348
Redding, CA 96001
(530) 225-5143
(530) 225-5251 FAX
California Relay Service at 711 or 800 735-2922

### CERTIFIED MAIL

07/05/2012

Christopher Staffin
PO Box 591
Shasta, CA  96087

Dear Mr. Staffin:

Subject:        Claim Against County of Shasta (ID #09-0002)

Shasta County Risk Management reviews all claims with legal counsel.  On July 2, 2012, the claim you presented on June 12, 2012, was considered.  We hereby <u>reject</u> any cause of action accruing before December 11, 2011, as it was not presented within six (6) months after the event occurred as required by law (see Sections 910 and 911.2 of the Government Code).

Your only recourse is to apply without delay to the Shasta County Board of Supervisors for leave to present a late claim (see Sections 911.2, 911.4, and 946.6 of the Government Code).  Under some circumstances, leave to present a late claim will be granted (see Section 911.6 of the Government Code).

Shasta County <u>denies</u> any cause of action accruing after December 11, 2011, as neither a proper charge against the County nor for an amount justly due.

### W A R N I N G

Subject to certain exceptions, you have only six (6) months from the date this notice was personally delivered or deposited in the mail to file a court action on this claim (see Government Code Section 945.6).

The six month time limit referred to in this notice applies only to claims or causes of action which are governed by the California Tort Claims Act which does not apply to Federal causes of action.  Additionally, the Tort Claims Act contains certain exceptions.

You may seek the advice of an attorney of your choice in connection with this matter.  If you desire to consult an attorney, you should do so immediately.

Sincerely,

Jonathan Hill
Risk Management Analyst III

Exhibit I

# EXHIBIT "B"

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**FILED**

JAN 1 4 2013

CLERK OF THE SUPERIOR COURT
BY: N. CLARK, DEPUTY CLERK

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

County of Shasta, David A. Kehoe, individually and as a Supervisor of
the County of Shasta; Additional parties listed on the attachment form

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Christopher Dale Staffin, an individual, Medicine Man Collective
Spiritual Center Corporation, a non-profit corporation

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is: <br> *(El nombre y dirección de la corte es):* Shasta County Superior Court <br><br> 1500 Court Street <br> Redding, CA 96001 | **CASE NUMBER:** <br> *(Número del Caso):* <br><br> 176436 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Michael A. Scheibli, sbn 196748, 1416 West Street, Redding, CA 96001   (530) 243-0317

| DATE: <br> *(Fecha)* JAN 1 4 2013 | Clerk, by <br> *(Secretario)* N. CLARK | , Deputy <br> *(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*

3. [ ] on behalf of *(specify):*

   under: [ ] CCP 416.10 (corporation)   [ ] CCP 416.60 (minor)
   [ ] CCP 416.20 (defunct corporation)   [ ] CCP 416.70 (conservatee)
   [ ] CCP 416.40 (association or partnership)   [ ] CCP 416.90 (authorized person)

   [ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

[SEAL]

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

SUM-200(A)

| SHORT TITLE: | CASE NUMBER. |
|---|---|
| Christopher Dale Staffin et al v  County of Shasta et al. | 176436 |

### INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff    ☑ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

LEONARD MOTY, individually, and as a Supervisor of the County of Shasta,
GLEN HAWES, individually, and as a Supervisor of the County of Shasta,
LINDA HARTMAN, individually  and as a Supervisor of the County of Shasta,
LES BAUGH, individually and as a Supervisor of the County of Shasta,
TOM BOSENKO, individually and as the Sheriff of the County of Shasta,
DEPUTY TIMOTHY ESTES and
DETECTIVE JOHN MEEKER
DEPUTY JESSE GUNSAULS,
individually and as deputies of the Shasta County Sheriff's Department

Page _____ of _____

Page 1 of 1

Form Adopted for Mandatory Use.
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

# EXHIBIT "C"

1  JEFFREY V. DUNN, Bar No. 131926
   LEE ANN MEYER, Bar No. 108472
2  Best Best & Krieger LLP
   18101 Von Karman Avenue, Suite 1000
3  Irvine, California 92612
   Telephone: (949) 263-2600
4  Facsimile: (949) 260-0972

**EXEMPT FROM FILING FEES
PURSUANT TO GOVERNMENT CODE
SECTION 6103**

5  Attorneys for Defendants
   County of Shasta, David A. Kehoe, Leonard Moty,
6  Glenn Hawes, Linda Hartman, Les Baugh, Tom
   Bosenko, Deputy Timothy Estes, Detective John
7  Meeker, and Deputy Jesse Gunsauls.

8

9                    **UNITED STATES DISTRICT COURT**

10                   **EASTERN DISTRICT OF CALIFORNIA**

11

12
   CHRISTOPHER DALE STAFFIN, an                 Case No.
13 individual, MEDICINE MAN
   COLLECTIVE, SPIRITUAL CENTER
14 CORPORATION, a Non profit                    **JOINDER IN NOTICE OF REMOVAL OF
   corporation,                                 ACTION**
15
                 Plaintiffs,
16
          v.
17
   COUNTY OF SHASTA; DAVID A.
18 KEHOE, individually and as a Supervisor
   of the County of Shasta; LEONARD
19 MOTY, individually and as a Supervisor of
   the County of Shasta; GLENN HAWES,
20 individually and as a Supervisor of the
   County of Shasta; LINDA HARTMAN,
21 individually and as a Supervisor of the
   County of Shasta; LES BAUGH,
22 individually and as a Supervisor of the
   County of Shasta; TOM BOSENKO,
23 individually and as the Sheriff of the
   County of Shasta; DEPUTY TIMOTHY
24 ESTES and DETECTIVE JOHN
   MEEKER, DEPUTY JESSE GUNSAULS,
25 individually and as deputies of the Shasta
   County Sheriff's Department; DOES 1-50,
26
                 Defendants.
27

28

1    TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:

2        PLEASE TAKE NOTICE that defendants County of Shasta, Les Baugh, Leonard Moty,

3   Glenn Hawes, Linda Hartman, Timothy Estes, John Meeker, Jesse Gunsauls, and Tom Bosenko

4   hereby join in defendant David A. Kehoe's Notice of Removal to this Court of the state court

5   action described in the said Notice of Removal.

6                                        Respectfully submitted,

7

8   Dated: February 14, 2013             BEST BEST & KRIEGER LLP

9

10                                       By: _____

11                                          JEFFREY V. DUNN
                                            LEE ANN MEYER
12                                          Attorneys for Defendants
                                            County of Shasta, David A. Kehoe,
13                                          Leonard Moty, Glenn Hawes, Linda
                                            Hartman, Les Baugh, Tom Bosenko,
14                                          Deputy Timothy Estes, Detective John
                                            Meeker, and Deputy Jesse Gunsauls
15

16

17

18

19

20

21

22

23

24

25

26

27

28
    55398.00002\7813015.1
                                        1
                              JOINDER IN NOTICE OF REMOVAL OF ACTION

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

1

## PROOF OF SERVICE

2

    At the time of service I was over 18 years of age and not a party to this action. My business address is 18101 Von Karman Avenue, Suite 1000, Irvine, California 92612. On February 14, 2013, I served the following document(s):

3

4

JOINDER IN NOTICE OF REMOVAL OF ACTION

5

☐ **By fax transmission.** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached.

6

7

8

☒ **By United States mail.** I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses listed below (specify one):

9

10

    ☐ Deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid.

11

    ☒ Placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

12

13

14

15

I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at Irvine, California.

16

17

☐ **By personal service.** At _____ a.m./p.m., I personally delivered the documents to the persons at the addresses listed below. (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents in an envelope or package clearly labeled to identify the attorney being served with a receptionist or an Individual in charge of the office. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not less than 18 years of age between the hours of eight in the morning and six in the evening.

18

19

20

21

22

☐ **By messenger service.** I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed below and providing them to a professional messenger service for service. A Declaration of Messenger is attached.

23

24

25

☐ **By overnight delivery.** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses listed below. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

26

27

28

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

1   ☐   **By e-mail or electronic transmission.** Based on a court order or an agreement of
2       the parties to accept service by e-mail or electronic transmission, I caused the
        documents to be sent to the persons at the e-mail addresses listed below. I did not
3       receive, within a reasonable time after the transmission, any electronic message or
        other indication that the transmission was unsuccessful.

4
5   Michael A. Scheibli, Esq.              Clerk of the Court
    1416 West Street                       Shasta County Superior Court
    Redding, CA 96001                      1500 Court Street, Rm. 319
6   (530) 243-0317                         Redding, CA 96001
    (530) 243-2003-Facsimile
7

8
        I declare under penalty of perjury under the laws of the State of California that the
9   above is true and correct.

        Executed on February 14, 2013, at Irvine, California.
10

11

12                                      _Kerry V. Keefe_____
                                        (   Kerry V. Keefe
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

- 2 -

PROOF OF SERVICE

EXHIBIT "D"

1   JEFFREY V. DUNN, Bar No. 131926
    LEE ANN MEYER, Bar No. 108472
2   Best Best & Krieger LLP
    18101 Von Karman Avenue, Suite 1000
3   Irvine, California 92612
    Telephone: (949) 263-2600
4   Facsimile: (949) 260-0972

**EXEMPT FROM FILING FEES
PURSUANT TO GOVERNMENT CODE
SECTION 6103**

5   Attorneys for Defendants
    County of Shasta, David A. Kehoe, Leonard Moty,
6   Glenn Hawes, Linda Hartman, Les Baugh, Tom
    Bosenko, Deputy Timothy Estes, Detective John
7   Meeker, and Deputy Jesse Gunsauls

8

9                          SUPERIOR COURT OF CALIFORNIA

10                              COUNTY OF SHASTA

11

12

13   CHRISTOPHER DALE STAFFIN, an
     individual, MEDICINE MAN
14   COLLECTIVE, SPIRITUAL CENTER
     CORPORATION, a Non profit
15   corporation,

16                Plaintiffs,

17        v.

18   COUNTY OF SHASTA; DAVID A.
     KEHOE, individually and as a Supervisor
19   of the County of Shasta; LEONARD
     MOTY, individually and as a Supervisor of
20   the County of Shasta; GLENN HAWES,
     individually and as a Supervisor of the
21   County of Shasta; LINDA HARTMAN,
     individually and as a Supervisor of the
22   County of Shasta; LES BAUGH,
     individually and as a Supervisor of the
23   County of Shasta; TOM BOSENKO,
     individually and as the Sheriff of the
24   County of Shasta; DEPUTY TIMOTHY
     ESTES and DETECTIVE JOHN
25   MEEKER, DEPUTY JESSE GUNSAULS,
     individually and as deputies of the Shasta
26   County Sheriff's Department; DOES 1-50,

27                Defendants.

28

Case No.  176436

UNLIMITED JURISDICTION

**NOTICE TO STATE COURT AND
ADVERSE PARTIES OF REMOVAL OF
ACTION TO FEDERAL COURT**

1   TO THE CLERK OF THE ABOVE-CAPTIONED COURT, PLAINTIFFS, AND

2   COUNSEL FOR PLAINTIFFS:

3   PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §§ 1331, 1441 and 1446,

4   Defendants' Notice of Removal of this action from the Superior Court of California, County of

5   Shasta, to the United States District Court for the Eastern District of California, together with

6   copies of all pleadings and process served upon Defendants, has this date been filed in the United

7   States District Court for the Eastern District of California.  A copy of the Notice of Removal

8   (without exhibits) is attached hereto as "Exhibit A."

9

10   Dated: February 14, 2013                        BEST BEST & KRIEGER LLP

11

12                                                   By: _____

13                                                   JEFFREY V. DUNN
                                                     LEE ANN MEYER
14                                                   Attorneys for Defendants
                                                     County of Shasta, David A. Kehoe,
15                                                   Leonard Moty, Glenn Hawes, Linda
                                                     Hartman, Les Baugh, Tom Bosenko,
16                                                   Deputy Timothy Estes, Detective John
                                                     Meeker, and Deputy Jesse Gunsauls

17

18

19

20

21

22

23

24

25

26

27

28   55398.00002\7796883.1

1

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

1

## PROOF OF SERVICE

2    At the time of service I was over 18 years of age and not a party to this action. My
3 business address is 18101 Von Karman Avenue, Suite 1000, Irvine, California 92612. On
February 14, 2013, I served the following document(s):

4    NOTICE TO STATE COURT AND ADVERSE PARTIES OF
    REMOVAL OF ACTION TO FEDERAL COURT

5

6    ☐   **By fax transmission.** Based on an agreement of the parties to accept service by
        fax transmission, I faxed the documents to the persons at the fax numbers listed
7        below. No error was reported by the fax machine that I used. A copy of the record
        of the fax transmission, which I printed out, is attached.

8    ☒   **By United States mail.** I enclosed the documents in a sealed envelope or package
9        addressed to the persons at the addresses listed below (specify one):

10       ☐   Deposited the sealed envelope with the United States Postal Service, with
            the postage fully prepaid.
11

12       ☒   Placed the envelope for collection and mailing, following our ordinary
            business practices. I am readily familiar with this business's practice for
13           collecting and processing correspondence for mailing. On the same day that
            correspondence is placed for collection and mailing, it is deposited in the
14           ordinary course of business with the United States Postal Service, in a
            sealed envelope with postage fully prepaid.
15

16   I am a resident or employed in the county where the mailing occurred. The
    envelope or package was placed in the mail at Irvine, California.

17   ☐   **By personal service.** At ____ a.m./p.m., I personally delivered the documents to
18       the persons at the addresses listed below. (1) For a party represented by an
        attorney, delivery was made to the attorney or at the attorney's office by leaving the
19       documents in an envelope or package clearly labeled to identify the attorney being
        served with a receptionist or an Individual in charge of the office. (2) For a party,
20       delivery was made to the party or by leaving the documents at the party's residence
        with some person not less than 18 years of age between the hours of eight in the
21       morning and six in the evening.

22   ☐   **By messenger service.** I served the documents by placing them in an envelope or
23       package addressed to the persons at the addresses listed below and providing them
        to a professional messenger service for service. A Declaration of Messenger is
24       attached.

25   ☐   **By overnight delivery.** I enclosed the documents in an envelope or package
26       provided by an overnight delivery carrier and addressed to the persons at the
        addresses listed below. I placed the envelope or package for collection and
27       overnight delivery at an office or a regularly utilized drop box of the overnight
        delivery carrier.

28

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

1

☐   **By e-mail or electronic transmission.**  Based on a court order or an agreement of

2   the parties to accept service by e-mail or electronic transmission, I caused the

documents to be sent to the persons at the e-mail addresses listed below. I did not

3   receive, within a reasonable time after the transmission, any electronic message or

other indication that the transmission was unsuccessful.

4

5   Michael A. Scheibli, Esq.          Clerk of the Court
1416 West Street                   Shasta County Superior Court

6   Redding, CA  96001                 1500 Court Street, Rm. 319
(530) 243-0317                     Redding, CA  96001

6   (530) 243-2003-Facsimile

7

8

        I declare under penalty of perjury under the laws of the State of California that the

9   above is true and correct.

        Executed on February 14, 2013, at Irvine, California.

10

11

12                              *Kerry V. Keefe*

13                                  (Kerry V. Keefe)

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 2 -

## PROOF OF SERVICE

At the time of service I was over 18 years of age and not a party to this action. My business address is 18101 Von Karman Avenue, Suite 1000, Irvine, California 92612. On February 14, 2013, I served the following document(s):

NOTICE OF REMOVAL OF ACTION

☐ **By fax transmission.** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed below. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached.

☒ **By United States mail.** I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses listed below (specify one):

    ☐ Deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid.

    ☒ Placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at Irvine, California.

☐ **By personal service.** At _____ a.m./p.m., I personally delivered the documents to the persons at the addresses listed below. (1) For a party represented by an attorney, delivery was made to the attorney or at the attorney's office by leaving the documents in an envelope or package clearly labeled to identify the attorney being served with a receptionist or an Individual in charge of the office. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not less than 18 years of age between the hours of eight in the morning and six in the evening.

☐ **By messenger service.** I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed below and providing them to a professional messenger service for service. A Declaration of Messenger is attached.

☐ **By overnight delivery.** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses listed below. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

1  ☐   **By e-mail or electronic transmission.**  Based on a court order or an agreement of
2      the parties to accept service by e-mail or electronic transmission, I caused the
       documents to be sent to the persons at the e-mail addresses listed below. I did not
3      receive, within a reasonable time after the transmission, any electronic message or
       other indication that the transmission was unsuccessful.
4
5      Michael A. Scheibli, Esq.                Clerk of the Court
       1416 West Street                         Shasta County Superior Court
       Redding, CA  96001                       1500 Court Street, Rm. 319
6      (530) 243-0317                           Redding, CA  96001
       (530) 243-2003-Facsimile
7

8
       I declare under penalty of perjury under the laws of the State of California that the
9  above is true and correct.

10     Executed on February 14, 2013, at Irvine, California.
11

12                                             _____
                                                        Kerry V. Keefe
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES OF
BEST BEST & KRIEGER LLP
18101 VON KARMAN AVENUE, SUITE 1000
IRVINE, CALIFORNIA 92612

- 2 -

PROOF OF SERVICE